875 A.2d 931

GAYATRI SHAH, PLAINTIFF–RESPONDENT, v. MAYANK SHAH, DEFENDANT–APPELLANT.

Argued May 2, 2005—Decided June 30, 2005.

*Ronald M. Abramson,* argued the cause for appellant (*Kleeblatt, Galler, Abramson & Zakim,* attorneys; *Mr. Abramson* and *Thomas R. McConnell,* on the briefs).

*Jane A. Herchenroder,* argued the cause for respondent.

*Mary M. McManus,* argued the cause for *amicus curiae* Legal Services of New Jersey (*Melville D. Miller, Jr.,* President, attorney; *Ms. McManus* and *Mr. Miller,* on the brief).

*Theresa A. Lyons,* submitted a brief on behalf of *amicus curiae* Partners for Women and Justice (*Heer & Lyons,* attorneys).

Justice RIVERA–SOTO delivered the opinion of the Court.

In *State v. Reyes,* 172 *N.J.* 154, 168–69, 796 *A.*2d 879 (2002), we addressed "whether a victim of domestic abuse who seeks refuge in this State is entitled to the protections of the [Prevention of Domestic Violence Act of 1991, *N.J.S.A.* 2C:25–17 to –33] when the abuser enters the State and commits an act of domestic violence in New Jersey." This appeal requires that we address an issue identified but not confronted in *Reyes:* the extent of the authority of New Jersey courts to protect a person, who claims to be a victim of domestic violence in another state and seeks refuge in New Jersey, from an alleged abuser who has had no contact with this State. *Id.* at 169 n. 3, 796 *A.*2d 879.

We hold that, upon the filing of a complaint by a plaintiff in the Family Part of the Chancery Division of the Superior Court in a county "where the alleged act of domestic violence occurred, where the defendant resides, or where the plaintiff resides or is sheltered," *N.J.S.A.* 2C:25–28a, New Jersey courts have the authority to issue *ex parte* relief, in the form of a temporary restraining order, upon a showing both that "the plaintiff is in danger of domestic violence," *N.J.S.A.* 2C:25–28g, and that the temporary restraining order is "necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought." *N.J.S.A.* 2C:25–28f. If personal jurisdiction cannot be exercised over the defendant within constitutional due process

limits, the temporary restraining order may only provide for prohibitory relief, and no final restraining order may issue. In that event, we hold further that, once issued, "[a]n order for emergency, ex parte relief . . . shall remain in effect until a judge of the Family Part issues a further order." *N.J.S.A.* 2C:25–28i.

## I.

In 2001, plaintiff Gayatri Shah and defendant Mayank K. Shah married in India. Shortly after the marriage, defendant returned to Illinois, where he is licensed to practice medicine and, almost eighteen months later, plaintiff joined him there. After four months, plaintiff, who was then pregnant, left the marital home in Illinois and sought refuge with family friends in Bergen County where, on August 22, 2003, she filed a complaint against defendant under the Prevention of Domestic Violence Act of 1991, *N.J.S.A.* 2C:25–17 to –33 (Domestic Violence Act). An *ex parte* temporary restraining order issued on the filing of the complaint. That *ex parte* temporary restraining order barred defendant from plaintiff's "confidential location" and prohibited defendant from (1) "having any oral, written, personal, electronic or other form of contact" with plaintiff; (2) "making or causing anyone else to make harassing communication to" plaintiff; (3) "talking, following or threatening to harm, to stalk or to follow" plaintiff; and (4) "possessing any and all firearms and other weapons." The order also included two forms of affirmative relief. Defendant was ordered (1) to "immediately surrender [any and all] firearms, weapons, permit(s) to carry, application(s) to purchase firearms and firearms purchaser ID card to the officer serving this Court Order," and was warned that the "[f]ailure to do so will result in your arrest and incarceration;" and (2) to continue medical coverage for plaintiff under defendant's health plan. Plaintiff also requested the "return [of] legal documents and social security card," a prayer for relief that was deferred.

The *ex parte* temporary restraining order was made returnable for a final hearing on September 4, 2003. Although both plaintiff

and her counsel appeared on that date, defendant appeared only through his counsel. The trial court entered an amended temporary restraining order that required that defendant pay plaintiff $500 by September 8, 2003 and further provided that "[a]ll other provisions of the TRO entered on 8/22/03 remain in effect."[1] The amended temporary restraining order was then made returnable on September 23, 2003, on which date the trial court entered a second amended temporary restraining order that provided that "[a]ll other provisions of the TRO entered on 8/22/03 and amended TRO entered on 9/4/03 remain in effect," and further ordered that defendant pay plaintiff "emergent support" of $1,500, to be followed by "an additional $300/wk until final hearing." It also provided that "[d]efendant, through counsel, shall send the following to plaintiff: [p]laintiff's work permit, social security card, all immigration related documents and [p]laintiff's personal mail." The second amended temporary restraining order was made returnable on October 9, 2003. Coincidentally, also on September 23, 2003, while in New Jersey, plaintiff was served with a complaint for divorce filed by defendant in his home state of Illinois.

Defendant commenced a two-tiered attack on the second amended temporary restraining order. First, he filed a notice of appeal challenging the trial court's exercise of both subject matter and personal jurisdiction. Second, defendant, through counsel, moved before the trial court to dismiss the domestic violence complaint for want of both subject matter and personal jurisdiction, see R. 4:6-2(a) and (b), and on *forum non conveniens* grounds, see generally *Kurzke v. Nissan Motor Corp.*, 164 *N.J.* 159, 164–66, 752 *A.*2d 708 (2000), as well as to stay the final restraining order hearing scheduled for October 9, 2003. Defendant asserted, before both the trial court and the Appellate Division, that because he had no contacts whatsoever with New

---

[1] That interim support order appears to have been in exchange for the adjournment of the final restraining order hearing to allow defendant's counsel sufficient time to file a motion to dismiss the domestic violence complaint for want of subject matter and personal jurisdiction.

Jersey, New Jersey's courts could not exercise personal jurisdiction over him. Plaintiff did not challenge defendant's factual assertions concerning the lack of minimum contacts.

By an order dated October 8, 2003, the trial court denied all of defendant's objections, clearing the path for the final restraining order hearing scheduled for the following day. Defendant immediately sought leave to appeal from the denial of his motion to dismiss and, therefore, the trial court adjourned its hearing on the final restraining order until October 20, 2003, continued in effect "[a]ll provisions of the Temporary Restraining Order entered on 8/22/03 [and] amended TRO's of 9/4/03 [and] 9/23/03," and noted that there would be "no further adjournments." On October 20, 2003, defendant sought emergent relief from the Appellate Division. That same day, the Appellate Division granted defendant's motion for leave to appeal, consolidated defendant's appellate applications, and ordered that "[a] stay is granted of any further proceedings in the trial court pending disposition of the appeal or the further order of the court, except that the temporary order remains in effect pending the appeal."

In a published opinion, the Appellate Division affirmed in part and reversed in part the second amended temporary restraining order, vacated its stay, and remanded the cause to the Family Part. *Shah v. Shah,* 373 *N.J.Super.* 47, 860 *A.*2d 940 (App.Div. 2004). As an overarching proposition, the panel held that the trial court possessed both subject matter and personal jurisdiction to issue the protective or prohibitory portions of the second amended temporary restraining order because "plaintiff, having a lawful presence in New Jersey and residing here, at least for the time being, is entitled to seek and expect the full protection of our laws." *Id.* at 52, 860 *A.*2d 940. The panel reasoned that once "a factual basis [to the domestic violence complaint] is found to exist, the court must be seen to have the authority to enter any reasonable order required to protect plaintiff's safety and her personal integrity[,]" concluding that "[t]his State's lack of jurisdiction over defendant's person cannot be seen as a reason for

denying or limiting plaintiff in respect of the protections our laws afford to her." *Ibid.*

The Appellate Division then distinguished between the propriety of issuing protective or prohibitory relief versus affirmative relief, noting that "[i]t is another thing entirely, however, to enter an order that acts upon defendant personally, in the sense of imposing affirmative obligations on him, in the absence of any conduct on his part subjecting himself to the jurisdictional sway of this State." *Ibid.* The panel grounded that distinction on the principle that "a court is without the power to effect a mandate when it lacks personal jurisdiction over defendant." *Id.* at 53, 860 *A.*2d 940. The panel explained that

> [t]he portion of the trial court's order that requires defendant to turn over plaintiff's personal papers—her work permit, social security card, immigration documents and mail—has hybrid qualities, however. In the sense that it works to keep plaintiff legally whole and as fully protected by the law as circumstances permit, as distinguished from factually better off, it has some of the same character as the protective order, and is authorized by a sensibly remedial application of the authority conferred in *N.J.S.A.* 2C:25–29b(12). To the extent such an order acts upon defendant to require him to undertake particular acts, however, it cannot, either as a matter of law or practicality, be specifically enforced in this State.
>
> [*Ibid.* (citation omitted).]

The panel held "that the trial court possessed the authority to enter the order requiring plaintiff's papers to be restored to her," reasoning that "the particular mandate was, in the circumstances, well within the trial court's discretion...." *Id.* at 53–54, 860 *A.*2d 940. Although it endorsed the trial court's power to issue this hybrid order, the Appellate Division cautioned that "that order can be enforced to require defendant to perform the acts mandated *only by a court that has personal jurisdiction over him.*" *Id.* at 54, 860 *A.*2d 940 (emphasis supplied).

We originally granted defendant's petition for certification. 182 *N.J.* 630, 868 *A.*2d 1032 (2005). However, because defendant sought review of an interlocutory judgment and on our own motion, we vacated the grant of certification and, treating defendant's petition for certification as an application for leave to appeal, *see, e.g., Butler v. Bonner & Barnewall, Inc.,* 56 *N.J.* 567,

573 n.3, 267 *A*.2d 527 (1970), granted defendant leave to appeal the interlocutory disposition of the Appellate Division. 183 *N.J.* 259, 872 *A*.2d 1050 (2005). We also granted *amicus curiae* status to Legal Services of New Jersey (LSNJ) and to Partners for Women and Justice (Partners).

## II.

### A.

In *State v. Reyes,* 172 *N.J.* 154, 160–61, 796 *A*.2d 879 (2002), we explained the purposes of the Domestic Violence Act as follows:

> The Legislature enacted the Domestic Violence Act "to assure victims of domestic violence the maximum protection from abuse the law can provide." Because it is remedial in nature, the Legislature directed that the Act be liberally construed to achieve its salutary purposes.
>
> The [Domestic Violence] Act defines domestic violence as the occurrence of one or more predicate offenses against a person protected under the Act. . . . . Under *N.J.S.A.* 2C:25–28a, a victim alleging the commission of an act of domestic violence can file a complaint and seek emergency *ex parte* relief. A plaintiff may apply for such relief "in a court having jurisdiction over the place where the alleged act of domestic violence occurred, where the defendant resides, *or where the plaintiff resides or is sheltered,* and the court shall follow the same procedures applicable to other emergency applications." Pursuant to that provision, courts will grant emergency, *ex parte* relief in the form of a TRO if "there is a showing that restraints are necessary to protect the life, health or well-being of a victim." If after conducting a hearing the court concludes that an act of domestic violence has occurred, the court may provide additional assistance to the victim.
>
> [(citations omitted).]

Because *Reyes* also thoughtfully marshaled the strong public policy considerations that undergird both the Domestic Violence Act as well as the decisional authority resulting from it, *id.* at 163–64, 796 *A*.2d 879, we need not address them again here. Instead, we turn directly to the assertions of the parties and *amici* in this case.

### B.

Defendant has never set foot in New Jersey, either literally or figuratively. Based on defendant's utter lack of contact with this State, he asserts that New Jersey courts lack both subject matter

and *in personam* jurisdiction over him sufficient to allow a final restraining order hearing to proceed. Although defendant concedes that New Jersey courts have jurisdiction to issue *ex parte* temporary restraining orders upon the filing of a domestic violence complaint, defendant maintains that, in addition to defeating any attempt to secure a final restraining order, New Jersey's want of jurisdiction over him also requires that the temporary restraining order, although properly entered in the first instance, must be vacated.[2]

Plaintiff recognizes the constitutional limitations imposed on the exercise of *in personam* jurisdiction. She argues, however, that the distinction drawn by the Appellate Division is both constitutional and entirely consonant with the purposes of the Domestic Violence Act: protective or prohibitory restraints (or, in some instances, "hybrid" restraints) are permissible, but affirmative obligations cannot be entered in the absence of personal jurisdiction over the defendant.

*Amicus curiae* LSNJ, while largely echoing the arguments advanced by plaintiff, asserts that New Jersey courts have jurisdiction over defendant for two additional reasons. First, LSNJ claims that, because defendant's purposeful actions in Illinois had consequences in New Jersey, New Jersey courts can and should exercise personal jurisdiction over defendant. Second, LSNJ endorses the Appellate Division's dichotomy between protective or prohibitory orders of protection and those orders of protection that require the performance of affirmative acts by a defendant, claiming that the former can be entered in the absence of personal

---

[2] Defendant also asserts a *forum non conveniens* argument, claiming that, because all of the witnesses are in Illinois, plaintiff has commenced an action for divorce in Illinois, and domestic violence complaints are cognizable before the Illinois courts, the proper forum for this domestic violence matter is Illinois, not New Jersey. Because we agree with the Appellate Division's finding that, "in the light of our resolution of the other issues in the matter, [that issue is] without sufficient merit to warrant separate discussion[,]" *Shah v. Shah*, 373 *N.J.Super.* 47, 54, 860 *A.2d* 940 (App.Div.2004), we also do not address defendant's *forum non conveniens* argument.

jurisdiction under the "status exception" to personal jurisdiction. *See DYFS v. M.Y.J.P.*, 360 *N.J.Super.* 426, 458, 823 *A.*2d 817 (App.Div.), *certif. denied,* 177 *N.J.* 575, 832 *A.*2d 325 (2003) (holding foreign mother's conduct "subjected her parental status to the jurisdictional sway of this State under the status exception, notwithstanding that she, herself, has never been present here").

Finally, *amicus curiae* Partners underscores the limited and emergent nature of the relief to be afforded under the Domestic Violence Act as well as the strong public policies that support it. Partners surveyed parallel statutory enactments nationwide and offers that survey as a basis for comparison and decision.

## III.

### A.

We address first whether there was proper subject matter jurisdiction in New Jersey for this domestic violence action or whether, as defendant asserts, this action should have been brought only in Illinois. We highlight that the Domestic Violence Act specifically provides that a domestic violence complaint can be brought "in a court having jurisdiction over the place ... where the plaintiff resides or is sheltered." *N.J.S.A.* 2C:25-28a;[3] *see also State v. Reyes,* 172 *N.J.* 154, 161, 796 *A.*2d 879 (2002). The fundamental logic of that statutory provision is unassailable: a victim of domestic abuse who seeks a place of refuge must be able

---

[3] New Jersey's domestic violence venue provisions are similar to those of fifteen other states which also protect domestic violence victims either where they reside or where they are temporarily sheltered. *See Ala.Code* § 30-5-3(c) (2005); *Del.Code Ann.* tit. 10, § 1042 (2005); *Idaho Code* § 39-6304(b) (Michie 2004); *Ind.Code Ann.* § 34-26-5-4(b) and (c) (West 2005); *Mass. Gen. Laws Ann.* ch. 209A, § 2 (West 2005); *Minn.Stat. Ann.* § 518B.01 (West 2005); *Mont.Code Ann.* § 40-15-301 (2003); *N.H.Rev.Stat. Ann.* § 173-B:3.I (2005); *N.M. Stat. Ann.* § 40-13-3 (Michie 2005); *R.I. Gen. Laws* § 15-15(2) (2004); *Tex. Fam.Code Ann.* § 82.003 (Vernon 2002); *S.C.Code Ann.* § 20-4-30(B) (Law. Co-op.2004); *Vt. Stat. Ann.* tit. 15, § 1102(c) (2004); *Wash. Rev.Code Ann.* § 26.50.020(6) (West 2005); *W. Va.Code* § 48-27-302 (2005); *Wyo. Stat. Ann.* § 35-21-102(ii) and -103(a) (Michie 2004).

to engage the protections of the law of the jurisdiction in which she is sheltered. To state otherwise flies in the face of plain common sense. We made that point clearly in *State v. Reyes, supra,* when we explained that "[o]ur holding today would not change even in the absence of defendant's harassing conduct in New Jersey." 172 *N.J.* at 167, 796 *A.2d* 879. Our approach is consistent with that of most other jurisdictions.

Although two states statutorily prohibit the filing of a domestic violence complaint against a non-resident defendant when there has been no proof of any in-state domestic violence, *see Ga.Code Ann.* § 19–13–2 (2004); 750 *Ill. Comp. Stat. Ann.* 60/208 (West 2005), the overwhelming majority of states protect a victim of domestic violence while she is in the state, regardless of where the abuse occurred.[4] This is so for a patently salutary purpose: a

---

[4] In contrast to the sixteen states—including New Jersey—that protect a domestic violence victim wherever sheltered, seventeen states require that the plaintiff in a domestic violence complaint be a resident of the State. *See Ark.Code Ann.* § 9–15–201(b) (Michie 2005); *Colo.Rev.Stat. Ann.* § 14–4–106 (West 2005); *Haw.Rev.Stat. Ann.* § 586–2 (Michie 2004); *Ky.Rev.Stat. Ann.* § 403.725 (Banks–Baldwin 2004); *La.Rev.Stat. Ann.* § 2133 (West 2004); *Me. Rev.Stat. Ann.* tit. 19–A, § 4003 (West 2004); *Mo. Ann. Stat.* § 455.015 (West 2005); *N.Y. Fam. Ct. Act* § 818 (McKinney 2005); *N.C. Gen.Stat.* § 50B–2(a) (2005); *N.D. Cent.Code* § 14–07.1–02 (2005); *Okla. Stat. Ann.* tit. 22, § 60.2A.1 (West 2005); *Or.Rev.Stat.* § 107.728 (2004); *S.D. Codified Laws* § 25–10–2 (Michie 2005); *Tenn.Code Ann.* § 36–3–602 (2005); *Tex. Fam.Code Ann.* § 82–003 (Vernon 2002); *Utah Code Ann.* § 30–6–3(2) (2004); *Va.Code Ann.* § 16.1–243A.3 (Michie 2004).

Sixteen states are silent as to both venue and personal jurisdiction in domestic violence matters. *See Alaska Stat.* § 18.66.100 (Michie 2004); *Ariz.Rev.Stat. Ann.* § 13–3602A (West 2005); *Cal. Fam.Code* § 6301 (West 2004); *Conn. Gen.Stat. Ann.* § 46b–15 (West 2005); *D.C.Code Ann.* § 16–1001(b)(B) (2005); *Fla. Stat. Ann.* § 741.30(j) (West 2005); *Iowa Code Ann.* § 236.3 (West 2005); *Kan. Stat. Ann.* § 60–3103 (2004); *Md.Code Ann., Fam. Law* § 4–501 (2002); *Mich. Comp. Laws Ann.* § 600.2950 (West 2005); *Miss.Code Ann.* § 93–21–7 (2004); *Neb.Rev.Stat.* § 25–2740 (2004); *Nev.Rev.Stat.* § 3.223 (2004); *Ohio Rev.Code Ann.* § 3113.31 (West 2005); 23 *Pa. Cons.Stat. Ann.* § 6106 (West 2005); *Wis. Stat. Ann.* § 767.01 (West 2005). This category of States default to their general venue provisions.

In either of these latter two categories, and for the constitutional reasons described below, *infra,* 184 *N.J.* at 137–39, 875 *A.2d* at 939–40 (2005), personal

state has the legitimate right to protect anyone within its borders from abuse regardless of the geographical source of the abuse. North Dakota, for example, specifically provides that

a court may issue a domestic violence protection order ... even though the actions constituting domestic violence occurred exclusively outside the state. In these cases, a respondent is subject to the personal jurisdiction of this state upon entry into this state. If the domestic violence justifying the issuance of a protection order ... occurred exclusively outside the state, the relief that may be granted is limited to an order restraining the party from having contact with or committing acts of domestic violence on another person in this state.

[*N.D. Cent.Code* § 14–07.1–02(9) (2005).]

The residents of New Jersey rightly should expect no less from their State, and the State of New Jersey can do no less for its residents who seek the protection of its laws. Consistent with the express terms of our own statute and the broad protections it provides for victims of domestic abuse, we hold that, as long as one of the statutorily enumerated subject matter jurisdiction conditions precedent to the filing of a domestic violence complaint is present and the action is venued either "where the alleged act of domestic violence occurred, where the defendant resides, or where the plaintiff resides or is sheltered," *N.J.S.A.* 2C:25–28a, New Jersey courts have all requisite subject matter jurisdiction to adjudicate a complaint seeking relief under the Domestic Violence Act.

### B.

A determination that plaintiff was entitled to bring her domestic violence complaint in New Jersey does not, however, answer the question raised here, that is, if personal jurisdiction cannot be exercised over the defendant, what limitations, if any, exist on the power of the court to grant temporary or final relief in a domestic violence case. In that respect, we agree with the distinction made by the Appellate Division between prohibitory

---

jurisdiction over a non-resident defendant can only be exercised in a manner consistent with the constitutionally limited reach of that State's long-arm jurisdiction.

orders that serve to protect the domestic violence victim, and affirmative orders that require that a defendant undertake an action. That distinction is rooted in two separate concepts. The former, which allows the entry of an order prohibiting acts of domestic violence against a defendant over whom no personal jurisdiction exists, is addressed not to the defendant but to the victim: it provides the victim the very protection the law specifically allows, and it prohibits the defendant from engaging in behavior already specifically outlawed. Because the issuance of a prohibitory order does not implicate any of defendant's substantive rights, the trial court had jurisdiction to enter a temporary restraining order to the extent it prohibited certain actions by defendant in New Jersey.

██ A different result obtains, however, when a court attempts to exercise its coercive power to compel action by a defendant over whom the court lacks personal jurisdiction. Although we have made clear that "a state may regulate conduct occurring outside its borders," we have also made clear that

> the test for "due process requires only that in order to subject a defendant to a judgment in personam, if he [or she] be not present within the territory of the forum, he [or she] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, [326 *U.S.* 310, 316, 66 *S.Ct.* 154, 158, 90 *L.Ed.* 95, 102 (1945)] (quoting *Milliken v. Meyer*, 311 *U.S.* 457, 463, 61 *S.Ct.* 339, 343, 85 *L.Ed.* 278, 283 (1940)). Those unchanging commands of due process govern every foray into the realm of long-arm jurisdiction over non-residents. *Jacobs v. Walt Disney World, Co.,* 309 *N.J.Super.* 443, 452, 707 *A.2d* 477 (App.Div.1998) (citing *Avdel Corp. v. Mecure,* 58 *N.J.* 264, 268, 277 *A.2d* 207 (1971)).
>
> [*Blakey v. Cont'l Airlines, Inc.,* 164 *N.J.* 38, 66, 751 *A.2d* 538 (2000).]

The analytical stricture is straightforward. "The first step is to determine whether defendants have had the requisite minimum contacts with New Jersey. We evaluate the minimum contacts of a defendant on a case-by-case basis." *Ibid.* (citation omitted). In so doing, we

> focus on "the relationship among the defendant, the forum, and the litigation." The "minimum contacts" requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff.
>
> "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'

contacts." The question is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."

[*Lebel v. Everglades Marina, Inc.*, 115 *N.J.* 317, 323–24, 558 *A.2d* 1252 (1989) (citations omitted) (cited in *Blakey v. Cont'l Airlines, Inc., supra,* 164 *N.J.* at 67, 751 *A.2d* 538).]

Once an examination of the defendant's minimum contacts with the State is complete, the policy question whether "the assertion of jurisdiction affect[s] traditional notions of fair play and substantial justice[,]" *Blakey v. Cont'l Airlines, Inc., supra,* 164 *N.J.* at 69, 751 *A.2d* 538, must be addressed. That requires the consideration of a number of factors that comprise "the flip-side of the purposeful availment doctrine, [that is] whether the offending party could reasonably anticipate that the forum state would have a substantial interest in vindicating the personal rights of the injured party." *Ibid.*

 Under the circumstances present here, no New Jersey court can exercise personal jurisdiction over defendant in a manner consonant with due process. It is conceded that defendant has zero contacts with the State of New Jersey. Thus, he has not "purposefully availed" himself of the laws of New Jersey. Indeed, this case presents the very circumstances condemned in *Lebel v. Everglades Marina, Inc., supra,* 115 *N.J.* at 323, 558 *A.2d* 1252: "The 'minimum contacts' requirement [cannot be] satisfied [by] the unilateral activities of the plaintiff." Viewed that way, there can be no doubt that subjecting defendant to a final order in New Jersey would "offend 'traditional notions of fair play and substantial justice.'" *Blakey v. Cont'l Airlines, Inc., supra,* 164 *N.J.* at 66, 751 *A.2d* 538 (citing *Int'l Shoe Co. v. Washington, supra,* 326 *U.S.* at 316, 66 *S.Ct.* at 158, 90 *L. Ed.* at 102). Therefore, in Domestic Violence Act matters, New Jersey courts lack the power to enter an order requiring the performance of any affirmative act by a defendant over whom in personam jurisdiction cannot be asserted.[5]

___

[5] We are unpersuaded by the "status exception" cases LSNJ claims permit the assertion of personal jurisdiction over defendant in these circumstances. Each

## C.

■ The minimum contacts considerations that forbid the entry of an order granting affirmative relief against a defendant over whom the court lacks personal jurisdiction also forbid the entry of a final restraining order within the context of a domestic violence complaint. A final restraining order must, by statutory definition, include affirmative relief. *See, e.g., N.J.S.A.* 2C:25–29b (requiring the surrender of firearms and permits), –29.1 (requiring the payment of a civil penalty) and –29.4 (requiring the payment of a surcharge). In addition, a final restraining order may well have severe collateral consequences, including registration in a central registry, *N.J.S.A.* 2C:25–34, a registration that is not subject to expungement. *In re M.D.Z.,* 286 *N.J.Super.* 82, 668 *A.2d* 423 (App.Div.1995). For those reasons, we also hold that when personal jurisdiction over a defendant is lacking, New Jersey courts do not have the power to enter a final restraining order against that defendant.

## D.

That said, although we endorse the distinction drawn by the Appellate Division between prohibitory and affirmative orders, we reject the panel's characterization of that "portion of the trial court's order that requires defendant to turn over plaintiff's personal papers—her work permit, social security card, immigration documents and mail" as a "hybrid." *Shah v. Shah,* 373 *N.J.Super.* 47, 53, 860 *A.2d* 940 (App.Div.2004). We see no

---

of the New Jersey cases relied upon by LSNJ is, although consistent with one another, basically different from this case: each such case deals with either child custody or the termination of parental rights where the *res* of the dispute—the children—are located in New Jersey. *See DYFS v. M.Y.J.P.,* 360 *N.J.Super.* 426, 823 *A.2d* 817 (App.Div.), *certif. denied,* 177 *N.J.* 575, 832 *A.2d* 325 (2003) (termination of parental rights); *Matsumoto v. Matsumoto,* 335 *N.J.Super.* 174, 762 *A.2d* 224 (App.Div.2000), *aff'd as modified,* 171 *N.J.* 110, 792 *A.2d* 1222 (2002) (custody); *Schuyler v. Ashcraft,* 293 *N.J.Super.* 261, 680 *A.2d* 765 (App. Div.1996), *certif. denied,* 147 *N.J.* 578, 688 *A.2d* 1054 (1997) (custody); *Genoe v. Genoe,* 205 *N.J.Super.* 6, 500 *A.2d* 3 (App.Div.1985) (custody).

principled difference between affirmatively requiring that defendant turn over documents, albeit documents with legal significance to plaintiff, and requiring that defendant pay money to plaintiff. If, consonant with due process, a court wanting jurisdiction over the person of a defendant cannot order that defendant to pay money, then it surely follows that the court similarly cannot order that defendant to take any other affirmative act.[6]

## E.

■ Defendant's final argument remains. According to defendant, even if a temporary restraining order of some form is properly entered in the absence of personal jurisdiction over the defendant, it must come to an end at some point due to its very nature as a temporary order. Thus, reasons defendant, because the trial court is required to hold a hearing "within 10 days of the filing of a complaint [under the Domestic Violence Act] in the county where the ex parte restraints were ordered," *N.J.S.A.* 2C:25–29a, temporary restraining orders cannot continue without end.

There is, no doubt, a superficial appeal to defendant's plea. That appeal, however, does not withstand close scrutiny. Much like the incarcerated civil contemnor who "carries the keys to freedom in his willingness to comply with the court's directive," *Catena v. Seidl,* 68 *N.J.* 224, 232, 343 *A.*2d 744 (1975) (Schreiber, J., dissenting) (citing *Green v. United States,* 356 *U.S.* 165, 197, 78 *S.Ct.* 632, 650, 2 *L.Ed.*2d 672, 696 (1958) (Black, J. dissenting)), defendant easily can rid himself of the entire parade of horribles he cites as flowing from the continued pendency of the temporary restraining order: he can either come into New Jersey and substantively defend against the domestic violence complaint, or he can request that both matters—the divorce action and the

---

6 At oral argument, counsel advised that the question of whether defendant should have turned over to plaintiff her "work permit, social security card, all immigration related documents and [her] personal mail" is moot.

domestic violence complaint—be heard in Illinois and seek a resolution favorable to him there. What defendant disingenuously urges simply cannot be done: we cannot, at defendant's whim, deny plaintiff the protection against domestic violence the Legislature intended, particularly when defendant is not prejudiced by the continued pendency of an order that requires that he do absolutely nothing.

The time strictures of *N.J.S.A.* 2C:25–29a do not envision circumstances such as those present here. On the contrary, *N.J.S.A.* 2C:25–29a addresses a timetable that permits both plaintiffs and defendants to seek a prompt resolution of the domestic violence complaint. When, as here, a defendant is able, by his voluntary inaction, to subvert the legal machinery designed to bring about the very closure he claims to seek, he cannot be heard to complain. Under those circumstances, the analysis must revert to the language of the Domestic Violence Act, which states that, once issued, "[a]n order for emergency, ex parte relief ... shall remain in effect until a judge of the Family Part issues a further order." *N.J.S.A.* 2C:25–28i.

## IV.

In sum, we hold that, upon the filing of a complaint by a plaintiff "alleging the commission of an act of domestic violence with the Family Part of the Chancery Division of the Superior Court [venued either] in a court having jurisdiction over the place where the alleged act of domestic violence occurred, where the defendant resides, or where the plaintiff resides or is sheltered," *N.J.S.A.* 2C:25–28a, New Jersey courts have the authority to issue *ex parte* relief, in the form of a temporary restraining order, upon a showing both that "the plaintiff is in danger of domestic violence," *N.J.S.A.* 2C:25–28g, and that the temporary restraining order is "necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought." *N.J.S.A.* 2C:25–28f. We further hold that, if personal jurisdiction cannot be exercised over a defendant within constitutional due process limits, the tempo-

rary restraining order may only provide for prohibitory relief, and no final restraining order may issue. Finally, in the event personal jurisdiction cannot be exercised over a defendant, we also hold that, once issued, "[a]n order for emergency, ex parte relief ... shall remain in effect until a judge of the Family Part issues a further order." *N.J.S.A.* 2C:25–28i.[7]

As modified by this opinion, the judgment of the Appellate Division is affirmed and the matter is remanded to the Family Part of the Chancery Division for further proceedings consistent with this opinion.

*For affirmance as modified/remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.

.

---

[7] Should a court outside New Jersey, having both subject matter jurisdiction over a domestic abuse complaint and personal jurisdiction over plaintiff and defendant, and which provides defendant reasonable notice and an opportunity to be heard, issue an order adjudicating the domestic violence complaint, that order is afforded full faith and credit, can be domesticated in New Jersey and, based on it, a judge of the Family Part is authorized to issue the "further order" required by *N.J.S.A.* 2C:25–28i. Section 1 of Article IV of the Constitution of the United States provides that "Full Faith and Credit shall be given in each State to the ... judicial Proceedings of every other State; And the Congress may by general Laws prescribe the Manner in which such ... shall be proved, and the Effect thereof." *U.S. Const.* art. IV, § 1. Consistent with that constitutional mandate, the "general Law" adopted by Congress regarding the domestication of foreign protection orders clearly states that "[a]ny protection order issued ... by the court of one State or Indian tribe ... shall be accorded full faith and credit by the court of another State or Indian tribe (the enforcing State or Indian tribe) and enforced as if it were the order of the enforcing State or tribe." 18 *U.S.C.* § 2265(a).