*Notice: This opinion is subject to correction before publication in the Pacific Reporter. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JASON THOMAS ARMSTRONG, | ) | |
| | ) | Supreme Court No. S-18452 |
| Appellant, | ) | |
| | ) | Superior Court No. 1WR-22-00017 CI |
| v. | ) | |
| | ) | O P I N I O N |
| LACIE REBECCA ANN CHANCE, | ) | |
| | ) | No. 7681 – January 19, 2024 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Wrangell, M. Jude Pate, Judge.

Appearances: John R. Grele, Law Office of John R. Grele PC, San Francisco, for Appellant. No appearance by Appellee.

Before: Maassen, Chief Justice, Carney, Borghesan, and Henderson, Justices. [Pate, Justice, not participating.]

MAASSEN, Chief Justice

## I. INTRODUCTION

A woman arrived in Alaska with her daughter and filed a petition for a domestic violence protective order against the boyfriend she had left in California. The superior court issued a series of ex parte 20-day protective orders followed by a long-term protective order.

The man appealed the long-term protective order, arguing in part that the superior court lacked the personal or subject matter jurisdiction necessary to grant such an order against someone who had never set foot in the state. Although we reject the man's argument about subject matter jurisdiction, we agree that the superior court lacked the personal jurisdiction necessary to justify an order imposing affirmative and long-term obligations on an out-of-state respondent who has no contacts with Alaska. We have already issued a summary order vacating the long-term protective order; this opinion explains our reasoning.

## II. FACTS AND PROCEEDINGS

### A. Facts

Jason Armstrong and Lacie Chance are the parents of a five-year-old daughter. They never married, but at the time of the superior court proceedings they had been in a relationship for eight years. They lived together in California until late April 2022, when Chance left with their daughter and relocated to Wrangell.

The day after Chance arrived in Alaska, she filed a petition for a domestic violence protective order (DVPO) against Armstrong in the superior court in Wrangell. The petition sought both a 20-day protective order and a long-term protective order (typically of one-year duration). The petition alleged "about 7 years" of domestic violence, including physical and mental abuse of both Chance and her daughter. The petition requested temporary custody of the daughter, asked that Armstrong be awarded no visitation, and asked for no child support.

### B. Proceedings

The superior court issued a 20-day protective order on April 28, 2022, finding probable cause to believe that Armstrong had committed or attempted to commit assault or reckless endangerment. The order granted temporary custody of the parties' daughter to Chance and denied Armstrong any visitation rights because of a perceived risk to the safety of Chance and the child. The order set a hearing on Chance's request for a long-term protective order for May 17.

Meanwhile, Armstrong pursued his own remedy in California. The California superior court granted his ex parte application on May 13, issuing a temporary emergency order for the return of the child to Armstrong's custody in California and setting a hearing for June 6.

The Alaska hearing began on May 17 and continued over four days. Armstrong appeared telephonically and by videoconference through his California attorney. Both parties presented witnesses. Armstrong maintained throughout the proceedings that the Alaska courts did not have jurisdiction over the matter because he had never been to Alaska and all the alleged acts of domestic violence happened in California. The court overruled Armstrong's jurisdictional objections, finding it had "temporary jurisdiction at least [to] the extent for [the court] to hear the domestic violence claims," and acknowledging that Armstrong had preserved the issue for appeal.

Armstrong appealed both the superior court's factual findings and its assertion of subject matter and personal jurisdiction. He asked that we vacate the superior court's judgment and reverse the long-term protective order. We concluded that the Alaska court did not have personal jurisdiction over Armstrong, and we therefore vacated the DVPO in a summary order with an explanation to follow.

## III. STANDARD OF REVIEW

"We apply our independent judgment to questions of law, including statutory interpretation."[1] "We review questions regarding both subject matter jurisdiction and personal jurisdiction de novo, as '[j]urisdictional issues are questions

---

[1] *Mitchell v. Mitchell*, 445 P.3d 660, 662-63 (Alaska 2019).

of law subject to this court's independent judgment.' "[2]  Under de novo review, we adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[3]

## III.   DISCUSSION

On appeal, Armstrong attacks both the superior court's subject matter jurisdiction — which he appears to argue has a residency requirement — and its assertion of personal jurisdiction, which he argues violated his right to due process.  We reject Armstrong's first argument but agree with his second.[4]

### A.   The Superior Court Had Subject Matter Jurisdiction Over Chance's Domestic Violence Petition.

Subject matter jurisdiction is "the legal authority of a court to hear and decide a particular type of case."[5]  In Alaska the superior court "is the trial court of general jurisdiction, with original jurisdiction in *all* civil and criminal matters."[6]  The statute defining the superior court's jurisdiction states expressly that "a petition for a protective order under AS 18.66.100–18.66.180" is "an action that falls within the

---

[2]    *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 61 P.3d 6, 10 (Alaska 2002) (emphasis and alteration in original) (quoting *McCaffery v. Green*, 931 P.2d 407, 408 n.3 (Alaska 1997)).

[3]    *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979).

[4]    In support of its assertion of jurisdiction, the superior court cited the temporary emergency jurisdiction provision of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified in Alaska as AS 25.30.330.  Armstrong disagrees with this interpretation of AS 25.30.330.  Since our finding that the court had subject matter jurisdiction is based on other grounds, we need not address these arguments.

[5]    *Hawkins v. Attatayuk*, 322 P.3d 891, 894 (Alaska 2014) (quoting *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue*, 151 P.3d 434, 438 (Alaska 2006)).

[6]    AS 22.10.020(a) (emphasis added).

concurrent jurisdiction of the superior court and the district court" and thus may be filed in either.[7]

Consistent with these jurisdictional statutes, AS 18.66.100(a) provides that "[a] person who is or has been a victim of a crime involving domestic violence may file a petition in the district or superior court for a protective order against a household member."[8] The appropriate venue is mandated by rule.[9] Alaska Civil Rule 3(h) provides:

> A petition or request for a protective order on domestic violence under AS 18.66 or a protective order on stalking or sexual assault under AS 18.65 may be filed in either the judicial district or the court location closest to
>
> (1) where the petitioner currently or temporarily resides;
> (2) where the respondent resides; or
> (3) where the domestic violence, stalking, or sexual assault occurred.

Other than these venue restrictions — not at issue here, as it is undisputed that Chance filed her petition in "the judicial district . . . where [she] currently or temporarily reside[d]" — no Alaska statute or rule limits an Alaska trial court's subject matter jurisdiction over domestic violence claims. This is with good reason, as many

---

[7] *Id.*; *see also* AS 22.15.030(a)(10) (providing for district court jurisdiction "over cases involving protective orders for domestic violence under AS 18.66.100– 18.66.180").

[8] *See also* AS 22.10.020(a) (noting concurrent jurisdiction of superior court and district court over "a petition for a protective order under AS 18 66.100– 18.66.180").

[9] *See* AS 22.10.030 ("Venue for all actions shall be set under rules adopted by the supreme court.").

other courts have recognized: "[A] state has the legitimate right to protect anyone within its borders from abuse regardless of the geographical source of the abuse."[10]

In support of his contrary position, Armstrong cites the United States Supreme Court's opinion in *Williams v. North Carolina*,[11] which he suggests stands for the proposition that due process requires the petitioner to be domiciled in the state in which the petition is filed. *Williams* did not involve a domestic violence petition; in *Williams* the Supreme Court held that North Carolina was constitutionally required to give full faith and credit to a Nevada divorce when there was no dispute that the parties had been domiciled in Nevada when divorced, as required by Nevada law.[12] The Court expressly avoided deciding whether the same full faith and credit should be accorded a divorce granted to parties who were temporary residents of Nevada as opposed to domiciled there;[13] the case thus has nothing to offer on the question of whether temporary residence in a state is enough to allow the state's courts to adjudicate a petition for a domestic violence restraining order.

---

[10]     *Shah v. Shah*, 875 A.2d 931, 938 (N.J. 2005) (noting that while Georgia and Illinois "statutorily prohibit the filing of a domestic violence complaint against a non-resident defendant when there has been no proof of any in-state domestic violence, . . . the overwhelming majority of states protect a victim of domestic violence while she is in the state, regardless of where the abuse occurred"). The court in *Shah* identifies Alaska as one of the states whose statutes "are silent as to both venue and personal jurisdiction in domestic violence matters" and therefore "default to their general venue provisions." *Id.* at 938 n.4.

[11]     317 U.S. 287 (1942).

[12]     *Id.* at 302-03.

[13]     *Id.* at 302 (stating that because the Court "must assume that petitioners had a bona fide domicil in Nevada," there was "no question on the present record whether a divorce decree granted by the courts of one state to a resident as distinguished from a domiciliary is entitled to full faith and credit in another state").

Alaska's divorce statutes require that at least one spouse be a resident at the time a divorce action is commenced in the state.[14] The DVPO statutes, on the other hand, make no mention of a residency requirement, and we see no other indication that the legislature intended there to be one. Indeed, such a requirement would run afoul of what we now expressly recognize as Alaska's "legitimate right to protect anyone within its borders from abuse regardless of the geographical source of the abuse."[15] We therefore conclude that the superior court had the subject matter jurisdiction necessary to consider Chance's petition for a long-term DVPO.

**B.** **The Superior Court Did Not Have Personal Jurisdiction Over Armstrong And Therefore Could Not Grant A Long-Term DVPO Against Him.**

Our holding that the superior court properly exercised subject matter jurisdiction over Chance's DVPO petition requires us to answer a second question: Did the court have the personal jurisdiction necessary to bind Armstrong? Our answer is that it did not, given the prohibitions and obligations the order contained.

**1.** **The superior court lacked personal jurisdiction over Armstrong because he has no contacts with the state.**

"Alaska's long-arm statute, AS 09.05.015, lays out a list of circumstances under which personal jurisdiction may be exercised."[16] The list is not exclusive; the

---

[14] AS 25.24.420 ("One of the parties to a complaint for legal separation must be a resident of the state at the time the action is commenced."); *see also* AS 25.24.090 (allowing out-of-state spouse to file for divorce in Alaska if defendant spouse is Alaska resident). "Residency" under Alaska law is conceptually similar to the domiciliary requirement at issue in *Williams*. *See Williams*, 317 U.S. at 298 (observing that "it seems clear that the provision of the Nevada statute that a plaintiff in this type of case must 'reside' in the State for the required period requires him to have a domicil as distinguished from a mere residence in the state").

[15] *Shah*, 875 A.2d at 938.

[16] *See Alaska Telecomm., Inc. v. Schafer*, 888 P.2d 1296, 1299 (Alaska 1995).

statute includes a "catch-all" provision,[17] which we have interpreted as allowing courts to exercise jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment.[18] The United States Supreme Court has long held that the Due Process Clause requires a court to have either general[19] or specific jurisdiction[20] over a defendant. General jurisdiction requires that the defendant be domiciled in the forum state,[21] while specific jurisdiction requires that the defendant have "minimum contacts" with the forum state.[22] The minimum contacts analysis "usually means that the party

---

[17]     AS 09.05.015(c) ("The jurisdictional grounds stated in (a)(2)-(10) of this section are cumulative and in addition to any other grounds provided by the common law.").

[18]     *Polar Supply Co., v. Steelmaster Indus., Inc.*, 127 P.3d 52, 54-55 (Alaska 2005).

[19]     *See, e.g.*, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State. General jurisdiction, as its name implies, extends to 'any and all claims' brought against a defendant. Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world." (citations omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

[20]     *See, e.g.*, *id.* at 1024-25 ("Specific jurisdiction is different: . . . The defendant, we have said, must take 'some act by which it purposefully avails itself of conducting activities within the forum State.' " (alteration omitted) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) ("[A] state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State.").

[21]     *Ford Motor Co.*, 141 S. Ct. at 1024 ("In what we have called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile." (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

[22]     *World-Wide Volkswagen Corp.*, 444 U.S. at 291; *see also Ford Motor Co.*, 141 S. Ct. at 1025 ("The plaintiff's claims, we have often stated, 'must arise out of or relate to the defendant's contacts' with the forum." (quoting *Bristol-Meyers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017)).

must 'purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' "[23] And even if minimum contacts exist, the exercise of personal jurisdiction must still comport with "traditional notions of fair play and substantial justice."[24]

Armstrong argues that there is no evidence he is domiciled in Alaska, so Alaska's courts do not have general jurisdiction over him. He also argues that Alaska does not have specific jurisdiction either, as he has "absolutely no contacts" with the state.

The record in this case supports his assertion — since Armstrong has no contacts with Alaska whatsoever, Alaska courts do not have personal jurisdiction over him. But that is not the end of the inquiry, as there is a split among state courts with regard to what exactly due process requires in the context of DVPO litigation. Some states require personal jurisdiction to the same extent as they would in any other civil matter, while others waive the usual jurisdictional requirements for DVPOs as long as the order imposes no affirmative duties on the respondent. We begin by analyzing the order at issue.

---

[23]    *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 61 P.3d 6, 14 (Alaska 2002) (alteration omitted) (quoting *Hanson*, 357 U.S. at 253).

[24]    *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

## 2. The DVPO both prohibits certain conduct and imposes certain affirmative obligations.[25]

The order at issue here, like all long-term DVPOs that follow the Alaska Court System's standardized form,[26] both prohibits certain conduct by the respondent and imposes on him certain affirmative obligations. Armstrong is specifically prohibited from "threaten[ing] to commit or commit[ting] acts of domestic violence, stalking or harassment" and "telephon[ing], contact[ing], or communicat[ing] in any way, directly or indirectly, with petitioner except . . . [b]y telephone or text message for purposes of facilitating child custody visitation as provided for in the California custody [order]." Armstrong is prohibited from serving legal papers "about *any other case* involving the parties" (emphasis in original) except "through a process server while this domestic violence order is in effect," unless the court first modifies the order at Armstrong's request. He is also prohibited from coming within 50 feet of Chance's residence and from "enter[ing], follow[ing], or interfer[ing] with the operation of any vehicle occupied by [Chance] or in [her] possession."

The order goes on to warn Armstrong of its various impacts and potential consequences: "You can be arrested without a warrant for violating this order after you are served"; "[i]f you possess a firearm or ammunition while this order is in effect, you may be charged with a federal offense even if [the order's express provisions] do not prohibit you from possessing these items"; and "[i]f you are convicted of assault in the fourth degree committed in violation of this order, you will be sentenced to at least 20 days in jail." The order also requires Armstrong (as well as Chance) to notify the court

---

[25] As noted above, we previously vacated the long-term protective order by summary order. For purposes of this opinion, however, we provide our explanation and analysis as though the order were still in effect.

[26] *See Long-Term Domestic Violence Protective Order (One Petitioner)*, *Form DV-105 (5/23)*, ALASKA COURT SYSTEM (on file with court). The standard form used in this matter was a previous version, Form DV-105 (1/21) (also on file with court).

in writing of "[a]ny changes in address or telephone numbers" and of "[p]ending civil court actions and domestic violence criminal actions involving either the respondent or the petitioner" as long as the order remains in effect. And the order may last a long time: Those aspects of the order that "prohibit[] the respondent from committing or threatening to commit acts of domestic violence, stalking or harassment, will remain in effect indefinitely, until dissolved by court order."

In sum, although the order is largely prohibitory, it also requires Armstrong to do certain things even though he may never appear in Alaska. For example, he must limit his long-distance contacts with Chance to certain modes and certain subjects, serve Chance only through a process server in *any* litigation between them, advise the Alaska court of any changes of address or phone number, and advise the Alaska court of any pending civil or "domestic violence criminal actions involving either" party. And the order has serious consequences not only if Armstrong violates it but even if he fully complies with it; most notably, as long as the order is in effect, he is prohibited by federal law from possessing firearms and ammunition.[27]

Recognizing the State's strong interest in protecting persons within its borders from abuse, we still must determine whether Alaska's courts may impose these prohibitions and obligations on a respondent over whom Alaska's courts lack personal jurisdiction.

### 3. Several states have allowed DVPOs even absent personal jurisdiction insofar as the orders are only prohibitory.

Some courts that allow DVPOs against absent defendants despite due process objections have reasoned that such an order can be characterized as a "status determination" for which personal jurisdiction is not necessary. In *Bartsch v. Bartsch*, for example, the Iowa Supreme Court affirmed a protective order granted against the plaintiff's out-of-state husband, relying in part on the U.S. Supreme Court's holding in

---

[27] 18 U.S.C. § 922(g)(8).

*Williams* that personal jurisdiction is not necessary in certain cases that simply determine the status of the in-state litigant rather than enter judgment against the absent litigant.[28] The *Bartsch* court observed that a protective order was just such a "status determination," as it "merely ordered the defendant to 'stay away from the protected party' and not assault or communicate with her, in furtherance of the State's strong interest in protecting Iowa residents from domestic abuse."[29] Noting that many courts allow orders affecting marriage, custody, and parental rights even absent personal jurisdiction over one party, the court explained:

> The greater and more immediate risk of harm from domestic violence, as opposed to the "considerable interest in preventing bigamous marriages and in protecting the offspring in marriages from being [illegitimate]" in dissolution proceedings, . . . makes application of the status exception to protective orders even more compelling than in dissolution actions. Indeed, the State's interest in protecting victims of domestic abuse is equal to, if not greater than, its interest in actions determining child custody or terminating parental rights because it involves the safety of the protected parties.[30]

The New Jersey Supreme Court followed a similar path in *Shah v. Shah*, holding that its trial courts could enter temporary orders prohibiting acts of domestic violence even absent personal jurisdiction over the defendant so long as the orders did

---

[28]   *Bartsch v. Bartsch*, 636 N.W.2d 3, 6-10 (Iowa 2001); *see also Shaffer v. Heitner*, 433 U.S. 186, 208 n.30 (1977) (recognizing that certain jurisdictional rules "such as the particularized rules governing adjudication of status" are not "inconsistent with the standard of fairness"); *S.B.*, 61 P.3d at 14 (observing that "[t]he majority of courts that have addressed the issue have held that child custody proceedings conducted under the jurisdictional rules of the UCCJA fit within *Shaffer*'s 'status' exception, meaning that personal jurisdiction over non-consenting parties is not required").

[29]   636 N.W.2d at 10.

[30]   *Id.* at 9 (alteration in original) (quoting *In re Kimura*, 471 N.W.2d 869, 875 (Iowa 1991)).

not require any affirmative acts of the defendant.[31]  The court reasoned that such a prohibitory order was "addressed not to the defendant but to the victim:  it provides the victim the very protection the law specifically allows, and it prohibits the defendant from engaging in behavior already specifically outlawed."[32]

We largely agree with the rationale of these cases:  A domestic violence protective order issued without personal jurisdiction over the absent respondent, but which does nothing but grant the petitioner a protected status within Alaska's borders, does not violate the absent respondent's right to due process.

**4.      We join the several states that require personal jurisdiction over the defendant for a long-term, non-emergency DVPO to be granted.**

The order at issue here establishes more than just Chance's status as a protected person under Alaska law.  As explained above, it also imposes significant and potentially long-lasting restrictions and obligations on Armstrong:  it restricts his right

---

[31]      875 A.2d 931, 940 n.5, 942 (N.J. 2005).

[32]      *Id.* at 939.  The court in *Shah* also noted the existence of a "safe harbor" provision in the state's domestic violence statute, allowing the petitioner to file the petition "in a court having jurisdiction over the place . . . where the plaintiff resides or is sheltered."  *Id.* at 936 (quoting N.J. Stat. Ann. § 2C:25-28(a)); *see also Spencer v. Spencer*, 191 S.W.3d 14, 17, 19 (Ky. App. 2006) ("balanc[ing] the due process rights of the defendant against the interest of the Commonwealth in protecting the victims of domestic violence" and concluding that protective order comported with due process "insofar as [it] prohibits [the defendant] from breaking the law in Kentucky by approaching [the plaintiff]" while "in all other respects" the order went "beyond the permissible limits of Kentucky courts' jurisdiction"); *Caplan v. Donovan*, 879 N.E.2d 117, 123, 125 (Mass. 2008) (explaining that protective order which "prohibits the defendant from abusing the plaintiff and orders him to have no contact with and to stay away from her . . . serves a role analogous to custody or marital determinations, except that the order focuses on the plaintiff's protected status rather than [the plaintiff's] marital or parental status"); *Hemenway v. Hemenway*, 992 A.2d 575, 580-82 (N.H. 2010) (affirming final protective order "to the extent that it protects the wife from abuse, but revers[ing] to the extent that the order requires affirmative action from the defendant").

to communicate with Chance even by phone, text, and email from California; mandates a method of service in "*any other case* involving the parties"; requires notice to the Alaska court of any changes of address or phone number and the pendency of other civil or "domestic violence criminal" litigation involving the parties; and restricts Armstrong's gun ownership. Violation of any of these terms could carry harsh consequences. We conclude that an order containing these terms violates due process if entered in the absence of personal jurisdiction over the respondent.

In *Mannise v. Harrell*, the North Carolina Court of Appeals held that a trial court cannot enter a DVPO absent personal jurisdiction over the respondent because such an order "involves both legal and non-legal collateral consequences[,]" including impacts on custody proceedings and job prospects.[33] The order "may also place restrictions on where a defendant may or may not be located, or what personal property a defendant may possess or use."[34] The order at issue in *Mannise*, for example, "implicate[d] substantial rights of Defendant, including visitation with and the care, custody, and control of his minor son, or access to the schools he is attending."[35] The plaintiff was therefore required to prove that the North Carolina courts had personal jurisdiction over the defendant.[36] "To hold otherwise would violate Due Process and 'offend traditional notions of fair play and substantial justice.' "[37]

The North Carolina Supreme Court reached the same conclusion in *Mucha v. Wagner*, declining to extend the status exception to a petition for a DVPO against a defendant over whom the state's courts lacked personal jurisdiction.[38] The court

---

[33] 791 S.E.2d 653, 660 (N.C. App. 2016).

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[38] 861 S.E.2d 501, 511 (N.C. 2021).

recognized "a significant conceptual distinction between termination-of-parental-rights and divorce proceedings on the one hand and a domestic violence proceeding on the other."[39] The court explained that

> [a]n order dissolving an individual's legal identity as a parent or spouse is not itself the source of new rights or duties — it is merely "a declaration of status." . . . By contrast, when a trial court enters a DVPO, the court creates a "status" which did not previously exist and then invokes that newly-created status to "prohibit[ the defendant] from engaging in behavior that would be entirely legal but for the court's order."[40]

The *Mucha* court also cited *Mannise*, echoing the same concerns about the impacts to substantive rights of defendants and other collateral consequences, and noting further that even a DVPO which appears on its face to be merely prohibitory may still impose affirmative obligations on a defendant.[41] For example, compliance with the DVPO might require the defendant to vacate a home or surrender possession of shared residences or personal property to the plaintiff.[42] The court concluded that these "fairness concerns" required a court to have personal jurisdiction over the defendant before issuing a DVPO.[43]

We share these fairness concerns. Allowing the order to stand only insofar as it prohibits certain actions while vacating any affirmative duties imposed, as some

---

[39] *Id.*

[40] *Id.* (alteration in original) (quoting *Fox v. Fox*, 106 A.3d 919, 925-26 (Vt. 2014)).

[41] *Id.*

[42] *Id.*

[43] *Id.* at 511-12.

courts have done,[44] is not enough to ensure that due process is served. Even prohibitory orders may come with long-distance consequences.[45] For example, both federal law[46] and California law[47] prohibit persons subject to a DVPO from possessing firearms while the DVPO is in effect, and certain aspects of Alaska's standard DVPO "remain in effect indefinitely, until dissolved by court order." And California, where custody of the parties' daughter is being litigated, applies a rebuttable presumption against custody by a party found to have "perpetrated domestic violence within the previous five years against the other party seeking custody of the child."[48] The effect of the long-term DVPO against Armstrong could thus reach well beyond Alaska's borders even if we could characterize it as merely prohibitory.

To be clear, this opinion does not curtail trial courts' ability to exercise temporary jurisdiction on an emergency basis to issue ex parte protective orders where "the petition establishes probable cause that a crime involving domestic violence has occurred, it is necessary to protect the petitioner from domestic violence, and . . . the petitioner has certified to the court . . . the efforts, if any, that have been made to provide

---

[44]     *See, e.g., Shah v. Shah*, 875 A.2d 931, 940 n.5, 942 (N.J. 2005); *Spencer v. Spencer*, 191 S.W.3d 14, 19 (Ky. App. 2006); *Hemenway v. Hemenway*, 992 A.2d 575, 580-82 (N.H. 2010).

[45]     *See Mucha*, 861 S.E.2d at 511.

[46]     18 U.S.C. § 922(g)(8).

[47]     CAL. Fam. Code § 6389(a) (West 2023). This statute also provides that "[u]pon issuance of a protective order, . . . the court shall order the respondent to relinquish any firearm or ammunition in the respondent's immediate possession or control." *Id.* § 6389(c)(1). It is unclear if or how this particular provision functions where, as here, the order was issued by an out-of-state court. But because Armstrong might possess firearms in California, it is possible that the interplay between the DVPO and this statute could require him to relinquish his firearms and possibly pay for their storage by local law enforcement. *See id.* § 6389(e).

[48]     *Id.* § 3044(a).

notice to the respondent."[49]  It is important to protect victims of domestic violence —
but consistent with the dictates of due process.[50]

## IV.   CONCLUSION

The long-term domestic violence protective order against Armstrong is
VACATED.

---

[49]      AS 18.66.110(a).

[50]      Because the lack of personal jurisdiction is sufficient grounds to vacate
the DVPO, we do not address Armstrong's arguments about its factual sufficiency.