*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANDY L. JAMES, | ) | |
| | ) | Supreme Court No. S-17353 |
| Appellant, | ) | |
| | ) | Superior Court No. 2BA-16-00282 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA FRONTIER CONSTRUCTORS, | ) | |
| INC. and NANUQ, INC., | ) | No. 7475 – July 31, 2020 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Utqiaġvik, Romano D. DiBenedetto, Judge.

Appearances: Mark A. Sandberg, Law Office of Mark A. Sandberg, Anchorage, and Dennis Mestas, Law Office of Dennis Mestas, Anchorage, for Appellant. Susan Orlansky, Reeves Amodio LLC, Anchorage, for Appellees.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Stowers, Justice, not participating.]

WINFREE, Justice.

## I.    INTRODUCTION

A worker was injured on the job and later filed personal injury lawsuits, which were consolidated, against two companies. The companies sought and obtained summary judgment rulings that they had statutory employer immunity from the injury claims under the Alaska Workers' Compensation Act's exclusive liability provision. The

worker appeals; because numerous issues of material fact make it impossible to determine whether the companies are entitled to judgment as a matter of law that they are immune from liability under the Act, we reverse the summary judgment decision, vacate the judgment against the worker, and remand for further proceedings.

## II.     FACTS AND PROCEEDINGS

### A.     Employment And Injury

In late 2014 Andy James was working in Deadhorse for Northern Construction & Maintenance, LLC, a company owned by John Ellsworth and members of his family.  Ellsworth also owned Alaska Frontier Constructors, Inc.  Alaska Frontier had some kind of business relationship with Nanuq, Inc.

In late December Northern Construction sent James from his usual work assignment to work in some capacity in connection with an ice road being constructed and maintained for Caelus Energy Alaska, LLC.  James was instructed to work at the direction of Scott Pleas.  Despite dangerous blizzard conditions, Pleas directed James to accompany another worker, Johann Willrich, to check fuel levels on equipment idling outside; James objected due to the weather, but was threatened with the loss of his job if he did not follow the direction.  James complied; he climbed a large grader to fuel it, but a wind gust blew him off, resulting in shoulder and spinal injuries.  James received workers' compensation benefits from Northern Construction.

### B.     Lawsuits

Alleging that Alaska Frontier negligently and recklessly sent workers out in the dangerous weather conditions, James sued it for his personal injuries.  Alaska Frontier responded that Pleas and Willrich were not Alaska Frontier employees.  James then filed a separate lawsuit against Nanuq, alleging that Pleas and Willrich were employees either of Nanuq or of Nanuq and Alaska Frontier operating a "joint venture."  The lawsuits were consolidated.

Alaska Frontier and Nanuq jointly moved for summary judgment to dismiss James's lawsuit. They asserted that for project owner Caelus's ice road project Nanuq was a general contractor, Nanuq subcontracted with Northern Construction on the project, and, under the Act's exclusive liability provision,[1] Nanuq was immune from the personal injury claim. They also asserted that, assuming Nanuq and Alaska Frontier were joint venturers on the project (as James had alleged in the alternative), Alaska Frontier had the same statutory immunity. Alaska Frontier separately filed another summary judgment motion to dismiss James's lawsuit, asserting that because it employed neither Pleas nor Willrich, James's claim against Alaska Frontier had to be dismissed.

James contested the summary judgment motions' evidentiary underpinnings by pointing to alleged deficiencies in the supporting evidence and presenting evidence he contended contradicted the companies' evidence. He also asserted that Alaska Frontier was a vendor and not a contractor who might be entitled to statutory employer

---

[1]     AS 23.30.055, the Act's exclusive liability provision, provides in relevant part:

> The liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and any fellow employee to the employee . . . on account of the injury or death. . . . In this section, "employer" includes . . . a person who, under AS 23.30.045(a), is liable for or potentially liable for securing payment of compensation.

*See also* AS 23.30.045(a) (providing that if employer is subcontractor and fails to secure compensation, contractor is liable for that compensation, and that if, in turn, contractor fails to secure compensation, project owner is liable to secure that compensation). Statutes such as AS 23.30.045 are referred to as "contractor-under" provisions. *See Miller v. Northside Danzi Constr. Co.*, 629 P.2d 1389, 1391 (Alaska 1981) (describing enactment of " 'contractor-under' provision," which "substituted the pre-statehood 'exclusive remedy' provision with an 'exclusive liability' provision").

immunity under the Act.[2]  Alaska Frontier and Nanuq replied to James's opposition, raising some new arguments and presenting new evidentiary submissions.  They conceded that no written agreements documented the relevant relationships among Nanuq, Alaska Frontier, and Northern Construction, arguing instead that a contract could be implied from affidavit testimony about the "working relationship" between the companies.  They contended that Alaska Frontier was not a vendor and that the implied contractual agreements could mean:  (1) Nanuq and Alaska Frontier were joint venturers and the joint venture subcontracted with Northern Construction; (2) Nanuq directly subcontracted with Northern Construction, but Alaska Frontier also was immune as a joint venturer with Nanuq; or (3) Nanuq subcontracted with Alaska Frontier, and Alaska Frontier in turn sub-subcontracted with Northern Construction.  They argued that under any of the configurations both corporations had statutory employer immunity from liability.  The companies later gave the superior court notice of supplemental authority[3] involving one of our decisions about "lent employees,"[4] apparently believing this bolstered their statutory employer immunity argument.

## C.    Superior Court's Orders Granting Summary Judgment

Although oral argument had been requested, the superior court granted summary judgment for the companies without it.  The court denied James's

---

**2**      *See* AS 23.30.045(f)(1) (excluding from statutory immunity "a vendor whose primary business is the sale or leasing of tools, equipment, other goods, or property").

**3**      *See* Alaska R. Civ. P. 77(*l*) (allowing citation to supplemental authority but prohibiting argument related to it).

**4**      *See Anderson v. Tuboscope Vetco, Inc.*, 9 P.3d 1013, 1017 n.13 (Alaska 2000).

reconsideration motions regarding both the failure to allow oral argument and the rulings' merits. Judgment was entered against James for attorney's fees.

### 1. Alaska Frontier's summary judgment order

The superior court stated that it was taking all reasonable inferences from the evidentiary presentations in James's favor; for summary judgment purposes, the court assumed Pleas and Willrich were Alaska Frontier employees. But the court concluded as a legal matter that Alaska Frontier was immune from liability to James because either (1) Alaska Frontier and Northern Construction were joint venturers as a result of Ellsworth's common corporate ownership or (2) Alaska Frontier subcontracted work to Northern Construction.

### 2. Nanuq's summary judgment order

The superior court stated that it was taking all reasonable inferences from the evidentiary presentations in James's favor; for summary judgment purposes, the court assumed the following material facts: (1) Caelus hired companies for its ice road project; (2) Caelus and Nanuq entered into a Master Services Agreement in July 2014 for projects that might be awarded to Nanuq, agreeing that Nanuq was an independent contractor required to furnish and maintain its own equipment for projects; (3) in September 2014 Caelus awarded Nanuq the ice road project; (4) Northern Construction was an equipment repair and maintenance contractor but had no written agreement with or evidence of payments from Nanuq; (5) Alaska Frontier hired Northern Construction and billed Nanuq for Northern Construction's and Alaska Frontier's labor; (6) there was no proof of a joint venture between Nanuq and Alaska Frontier; (7) Northern Construction "was called to send a mechanic" to the project, James was sent and was working in the scope of his employment with Northern Construction when he was injured; and (8) James received workers' compensation benefits from Northern Construction.

From these facts the court concluded that: (1) Caelus was the project owner; (2) Nanuq was the general contractor; (3) Nanuq subcontracted with Alaska Frontier and Alaska Frontier billed Nanuq for both Alaska Frontier's and Northern Construction's work; (4) Northern Construction had a "casual temporary labor agreement relationship" with Alaska Frontier and James was an employee of either Northern Construction or Alaska Frontier;[5] (5) regardless of which entity employed James, statutory employer immunity protected Nanuq from James's injury claim because Nanuq was by law responsible for workers' compensation for James if neither Northern Construction nor Alaska Frontier provided him workers' compensation.

James appeals both the refusal to allow oral argument and the summary judgment rulings' merits. Because we agree that summary judgment was not warranted on the evidentiary presentation and relevant law and therefore reverse and remand, we do not need to address the superior court's erroneous failure to allow oral argument on the summary judgment motions.[6]

---

[5] This suggests that the superior court believed, as Nanuq and Alaska Frontier suggested in their supplemental authorities, that the lent employee cases were encompassed within the contractor-under rule. *See* AS 23.30.045 (looking to contract-chain relationships to determine if businesses are liable to secure workers' compensation coverage for immunity from common law liability under AS 23.30.055).

[6] *See* Alaska R. Civ. P. 77(e) (providing oral argument must be held on summary judgment motion when requested).

## III. STANDARD OF REVIEW

"We review grants of summary judgment de novo."[7] Summary judgment is proper only when undisputed material facts lead to the conclusion that a party is entitled to judgment as a matter of law.[8]

## IV. DISCUSSION

### A. Summary Judgment Standard

Under our long-standing summary judgment framework, the moving party has the initial burden of proving, through admissible evidence, that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law.[9] If that burden is met, the party seeking to avoid summary judgment must present specific facts showing there is "evidence reasonably tending to dispute or contradict" the moving party's evidence, thereby creating a genuine issue of material fact.[10] The opposing party does not need to produce enough evidence to persuade the court that it would prevail at trial, only enough evidence to demonstrate a genuine issue of material fact.[11] "[A] material fact is one upon which resolution of an issue turns."[12] "[B]ecause the existence

---

[7] *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

[8] Alaska R. Civ. P. 56(c); *Christensen*, 335 P.3d at 517.

[9] *Christensen*, 335 P.3d at 517.

[10] *Id.* (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978)).

[11] *Id.* at 519-20.

[12] *Id.* at 519.

of a dispute over a material fact issue is a question of law, the determination is objectively based and employs a reasonableness standard."[13]

The "summary judgment standard does not allow trial courts . . . to make trial-like credibility determinations [or] conduct trial-like evidence weighing."[14] "[T]he only questions to be answered at the summary judgment stage are whether a reasonable person could believe the [opposing] party's assertions and whether a reasonable person could conclude those assertions create a genuine dispute as to a material fact."[15] The evidentiary threshold to preclude summary judgment is low, serving the important function of preserving the right to trial.[16]

## B. Relevant Workers' Compensation Legal Concepts

The Act makes workers' compensation generally an employee's exclusive remedy against an employer;[17] the term "employer" in AS 23.30.055 includes both a worker's direct employer[18] and anyone "liable for or potentially liable for securing payment of compensation" under the Act. Alaska Statute 23.30.045(a) sets out the entities in a chain of contractual relations that may be liable for securing workers' compensation payment for subcontractors' and contractors' employees:

---

[13] *Id.* (footnote omitted).

[14] *Id.* at 520.

[15] *Id.*

[16] *Id.* at 520-21.

[17] *See* AS 23.30.055 (providing that unless employer fails to secure payment of workers' compensation under Act, employer's sole liability to employee is under Act).

[18] *See* AS 23.30.395(20) (defining "employer" as "a person employing one or more persons in connection with a business or industry coming within the scope of this chapter and carried on in this state").

If the employer is a subcontractor and fails to secure the payment of compensation to its employees, the contractor is liable for and shall secure the payment of the compensation to employees of the subcontractor. If the employer is a contractor and fails to secure the payment of the compensation to its employees or the employees of a subcontractor, the project owner is liable for and shall secure the payment of compensation to employees of the contractor and employees of a subcontractor, as applicable.

Alaska Statute 23.30.045(f)(2) defines "project owner" as someone "who in the course of the person's business, engages the services of a contractor and who enjoys the beneficial use of the work." Alaska Statute 23.30.045(f)(1) defines "contractor" as someone "who undertakes by contract performance of certain work for another but does not include a vendor whose primary business is the sale or leasing of tools, equipment, other goods, or property." Alaska Statute 23.30.045(f)(3) defines "subcontractor" as someone "to whom a contractor sublets all or part of the initial undertaking."[19]

Because Northern Construction paid James's workers' compensation claim, the Act's exclusive liability provision protects from civil liability for his injuries both Northern Construction and any entities who have the requisite contractual relationships with Northern Construction.[20] There seems to be no dispute between the parties that

---

[19] *See also Everette v. Alyeska Pipeline Serv. Co.*, 614 P.2d 1341, 1345-46 (Alaska 1980) (holding that agent corporation for oil companies owning permit to build pipeline was not within contractor-under statute because agent corporation did not "relegate[] any of its duties previously undertaken" in its contract with oil companies when it hired contractors to build pipeline); *Subcontract*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "subcontract" as "[a] secondary contract made by a party to the primary contract for carrying out the primary contract, or a part of it").

[20] *See* AS 23.30.055 (stating exclusive liability provision); AS 23.30.045(a) (continued...)

Caelus is the project owner. For the exclusive liability provision to preclude James's injury claims against *both* Nanuq and Alaska Frontier, (1) Caelus would have to jointly contract with Nanuq and Alaska Frontier and they would have to subcontract with Northern Construction[21] or (2) Caelus would have to contract with Nanuq, Nanuq would have to subcontract with Alaska Frontier, and Alaska Frontier would have to joint venture or subcontract with Northern Construction. The contractual relationships among Northern Construction, Nanuq, and Alaska Frontier thus are critical to a legal conclusion that the latter two companies are entitled to judgment as a matter of law that they have immunity under AS 23.30.055 from James's injury claims.[22]

If Alaska Frontier and Nanuq are not joint venturers, then Alaska Frontier might be either a vendor or a subcontractor to Nanuq. If Nanuq subcontracted with Alaska Frontier, then for statutory immunity in the AS 23.30.045(a) chain as a contractor or subcontractor to apply, Northern Construction would have to be either a joint venturer with or a subcontractor to Alaska Frontier. If Alaska Frontier and Nanuq are not joint venturers, Nanuq could directly subcontract with Northern Construction as the corporations initially contended before the superior court, but this would leave Alaska Frontier outside the contracting chain; we do not consider this possibility because the

---

[20]     (...continued)
(setting out chain of contractual relations).

[21]     In their brief before us, the corporations assert that Alaska Frontier "contracted with Caelus" possibly as "a contractor in its own right" rather than as "a joint venturer with Nanuq." But the only evidence they cite is a letter from Caelus; according to a Nanuq employee's affidavit, the letter "awarded Nanuq the work on the ice road and pad construction project."

[22]     *Cf. Lovely v. Baker Hughes, Inc.*, 459 P.3d 1162, 1169-70 (Alaska 2020) (emphasizing importance of contractual relationships and requiring alleged project owner to have contractual relationship with contractor).

superior court did not address it. And if Alaska Frontier is a vendor, then it is not in the contracting chain, regardless of its contractual relationship with Northern Construction.[23]

Finally, contractor-under immunity under AS 23.30.055 and AS 23.30.045 is different from employer immunity under the "lent employee" doctrine. The former looks to contract-chain relationships between businesses to determine if the businesses are liable to secure workers' compensation coverage and thus immune from common law liability under AS 23.30.055.[24] The latter looks to the employment relationships between an individual and two possible employers, the "general employer" and the "special employer."[25] If a special employment relationship exists, the special employer may be liable for workers' compensation coverage and therefore may, as an employer under AS 23.30.395(20), rely on the exclusive liability defense to a common law injury claim.[26]

---

[23]    *See* AS 23.30.045(f)(1) (excluding vendor from contractor definition).

[24]    *See Lovely*, 459 P.3d at 1167-69.

[25]    *See Anderson v. Tuboscope Vetco, Inc.*, 9 P.3d 1013, 1017 (Alaska 2000).

[26]    *See Buckley v. Am. Fast Freight, Inc.*, 444 P.3d 139, 145 (Alaska 2019). In *Tuboscope Vetco, Inc.* we adopted the following three-part test for special employment relationships:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.

(continued...)

-11-                                    7475

Actual contractual relationships thus are as important for a lent employee analysis as they are for the contractual chain analysis of project owners, joint venturers, contractors, and subcontractors.**²⁷**

### C. Factual And Legal Disputes Barring Summary Judgment

#### 1. Joint venture between Alaska Frontier and Northern Construction

No party asserted or presented evidence during the summary judgment briefing that Alaska Frontier and Northern Construction were joint venturers.**²⁸** Indeed, the superior court noted that "neither party . . . has presented *evidence* of a[] joint venture." (Emphasis in original.) The sole source of the court's contingent determination that the two companies might have been working under a joint venture

---

**²⁶** (...continued)
9 P.3d at 1017 (quoting 3 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 48.00, at 8-434 (1997)).

**²⁷** *See Buckley*, 444 P.3d at 146-47 (discussing terms of temporary-labor contract between two companies when considering implied contract between employee and special employer); *Tuboscope Vetco, Inc.*, 9 P.3d at 1017-19 (detailing terms of contract between special and general employers to evaluate whether implied employment contract existed between employee and special employer); *cf. Word v. Motorola, Inc.*, 662 P.2d 1024, 1026-27 (Ariz. 1983) (distinguishing temporary labor from subcontractor status); *Hamberg v. Sandia Corp.*, 179 P.3d 1209, 1211-13 (N.M. 2008) (same).

**²⁸** A "joint venture" is "[a] business undertaking by two or more persons engaged in a single defined project" with the following "necessary elements": "(1) an express or implied agreement; (2) a common purpose that the group intends to carry out; (3) shared profits and losses; and (4) each member's equal voice in controlling the project." *Joint venture*, BLACK'S LAW DICTIONARY (11th ed. 2019). A joint venture "may be implied from the facts or circumstances of the case." *N. Lights Motel, Inc. v. Sweaney*, 561 P.2d 1176, 1187 (Alaska 1977). "Although each venturer need not exercise actual physical control of the instrumentalities used in the enterprise each must have a legal right to some voice in the direction and control of the enterprise." *Id.*

agreement was that Ellsworth was an owner of both companies, as the only reference James made about the companies' relationship was that they were "sister companies" Ellsworth owned.[29] Sister corporations are not, based only on their common ownership, a joint venture as a matter of law.[30] Absent any evidence about the factors necessary to determine that Alaska Frontier and Northern Construction were joint venturers, it was error to suggest or conclude that a joint venture could exist to provide Alaska Frontier with statutory immunity as a direct employer.[31]

### 2. James as Alaska Frontier's employee

In granting Nanuq summary judgment, the superior court explicitly stated that Nanuq and Alaska Frontier were not joint venturers. The court decided, based on invoices James submitted as evidence, that Alaska Frontier was a subcontractor to Nanuq. The court stated that Nanuq had statutory employer immunity because "James was either an employee of [Alaska Frontier] or [Northern Construction]" or because Northern Construction "had a 'casual temporary labor agreement relationship' (otherwise known as a contract) with [Alaska Frontier]." The court concluded that under "either scenario" Nanuq would have been liable to pay workers' compensation if both Alaska Frontier and Northern Construction failed to do so.

No party argued or presented evidence during the summary judgment briefing to establish that James was a general or special employee of Alaska Frontier. And the court said in its statement of the facts underlying its grant of summary judgment

---

[29]     A "sister corporation" is "[o]ne of two or more corporations controlled by the same, or substantially the same, owners." *Sister corporation*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[30]     *See N. Lights Motel, Inc.*, 561 P.2d at 1187 n.18 (noting that "mere joint ownership" does not "in effect establish[] a business partnership or joint venture").

[31]     *See id.* at 1187 (setting out factors important to existence of joint venture).

that James was injured while working in the scope of his employment for Northern Construction and that Northern Construction paid workers' compensation to James. The corporations assert on appeal that James was "in fact" employed by Northern Construction. Absent any evidence of or discussion about the factors necessary to determine that James was Alaska Frontier's special employee under the lent employee doctrine,[32] it was error to suggest or conclude that James could be an Alaska Frontier employee such that (1) Alaska Frontier would have direct employer exclusive liability protection under the Act, and (2) assuming Nanuq subcontracted with Alaska Frontier, Nanuq would have been required by law to secure compensation payment for James if Alaska Frontier had not and Nanuq therefore had exclusive employer liability protection under the Act.

### 3. Alaska Frontier's status as a contractor or subcontractor

Alaska Frontier and Nanuq argue on appeal that both were contractors as defined in AS 23.30.045(f)(1) because either (1) they were joint venturers contracting with the project owner, or (2) Caelus contracted directly with Alaska Frontier and Nanuq on the ice road project. Material factual disputes preclude summary judgment on either theory. An affidavit the corporations submitted during summary judgment briefing stated Caelus contracted only with Nanuq, and only Nanuq entered into the master services agreement with Caelus that was incorporated into the contract award. The Master Services Agreement, included as an exhibit, showed the contracting parties to that agreement were "Caelus Energy Alaska LLC and Affiliates" and "Nanuq, Inc." No evidence on important factors supporting the existence of a joint venture — such as a

---

[32] *See supra* note 26 and accompanying text.

control-sharing arrangement and a profit-sharing arrangement[33] — was presented to the superior court. The court determined that, taking all inferences from the evidentiary presentations in James's favor, Caelus's only contractor was Nanuq. We see no error in that determination.

The corporations alternatively asserted that Nanuq subcontracted with Alaska Frontier but presented scant evidence supporting their legal theory. They contended Nanuq could have an implied subcontract with Alaska Frontier, which depends on a factual evaluation to determine the parties' intention.[34] Evidence reflects that the vast majority of monies Nanuq paid to Alaska Frontier were for equipment rentals, suggesting Alaska Frontier may have been primarily a vendor on the ice road project and not a subcontractor to Nanuq.[35] And to determine whether Alaska Frontier was a subcontractor, evidence would have to establish exactly what part of the main

---

[33]     *See supra* note 28.

[34]     "The existence or non-existence of a contract is a question of fact . . . ." *Earthmovers of Fairbanks, Inc. v. Pac. Ins. Co.*, 614 P.2d 781, 782 (Alaska 1980). An implied-in-fact contract "arises where the court finds from the surrounding facts and circumstances that the parties intended to make a contract but failed to articulate their promises and the court merely implies what it feels the parties really intended." *Martens v. Metzgar*, 524 P.2d 666, 672 (Alaska 1974) (quoting *Hill v. Waxberg*, 237 F.2d 936, 939 (9th Cir. 1956)).

[35]     It is unclear how the vendor exception should be interpreted with respect to the vendor's "primary business." *See* AS 23.30.045(f)(1) (defining "contractor" as someone "who undertakes by contract performance of certain work for another but does not include *a vendor whose primary business is the sale or leasing of tools, equipment, other goods, or property*" (emphasis added)). Is "primary business" related to the alleged vendor's entire business or its business in the context of the contract in question? Given the undeveloped facts of this case — including a lack of evidence about Alaska Frontier's various activities and related income streams — we decline to render a hypothetical and abstract interpretation of the statute.

contract Alaska Frontier was required to carry out — what specific contractual duties Alaska Frontier assumed from the Nanuq-Caelus contract.[36]  But there is no written subcontract, only conclusory statements in affidavits about general agreements and understandings and a course of business by all involved "to get jobs done."

Evidence was presented that (1) Nanuq's contract with Caelus required written notification to Caelus of any subcontractors so that Caelus could obtain appropriate indemnity agreements, but this did not happen with respect to Alaska Frontier; and (2) Nanuq had a union labor agreement for work on the ice road project and Alaska Frontier did not, even though Alaska Frontier had other labor agreements at the time of the ice road project.  Nanuq and Alaska Frontier argue that failure to comply with third-party contractual requirements does not mean there was no contractor-subcontractor relationship, but they fail to recognize that at the summary judgment stage this evidence creates a reasonable inference that there was no such relationship.  Nanuq and Alaska Frontier may attempt to establish their contractual relationships at trial.

Unless the superior court had sufficient evidence before it to determine exactly what portion of the main contract was subcontracted to Alaska Frontier, the court could not determine whether Alaska Frontier actually was a subcontractor rather than a vendor.  The court did not have that evidence before it; it was error to speculate that a contractor-subcontractor relationship existed between Nanuq and Alaska Frontier, then rely on that to further speculate about the relationship between Alaska Frontier and Northern Construction.

### 4.    Northern Construction's subcontractor status

The evidentiary presentations about Northern Construction's subcontractor status also are unclear.  Without knowing what the putative subcontract between Nanuq

---

[36]    *See supra* note 19 and accompanying text.

and Alaska Frontier actually covered regarding Nanuq's contract with Caelus, it is impossible to determine what portions of Alaska Frontier's supposed subcontract could have been sub-subcontracted to Northern Construction. Other than some general observations that Northern Construction was hired to perform equipment maintenance, apparently on equipment Alaska Frontier leased to Nanuq; that Northern Construction's employees were at times called to work at locations away from Deadhorse to fill "gaps"; and that Nanuq paid Alaska Frontier and Alaska Frontier paid Northern Construction, the evidentiary presentations tell us nothing about the actual contractual arrangements between Alaska Frontier and Northern Construction. It was error to speculate that a putative subcontractor relationship existed between Alaska Frontier and Northern Construction.

## V.    CONCLUSION

We REVERSE the superior court's grants of summary judgment, VACATE the judgment entered against James, and REMAND for further proceedings.