NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RALPH HERNANDEZ,<br><br>               Appellant,<br><br>     v.<br><br>STATE OF ALASKA, OFFICE OF THE GOVERNOR, MICHAEL DUNLEAVY, in an official capacity, STATE OF ALASKA, OFFICE OF THE ATTORNEY GENERAL, KEVIN CLARKSON, in an official capacity, STATE OF ALASKA, DEPARTMENT OF ADMINISTRATION, OFFICE OF PUBLIC ADVOCACY, SHELLY CHAFFIN, in an official capacity, STATE OF ALASKA, DEPARTMENT OF REVENUE, and PETER SCOTT, in an official capacity.<br><br>               Appellees. | Supreme Court No. S-18729<br><br>Superior Court No. 3AN-22-07223 CI<br><br>MEMORANDUM OPINION AND JUDGMENT*<br><br>No. 2064 – December 18, 2024 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Ralph Hernandez, pro se, Wasilla, Appellant. Christopher W. Yandel, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellees.

---

\*       Entered under Alaska Appellate Rule 214.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

An inmate demanded that Governor Michael Dunleavy and several other current and former public officials provide him with proof of various bonds, oaths, and licenses. When those officials did not respond to the inmate's requests, he filed Uniform Commercial Code (UCC) financing statements[1] asserting putative debts they owed him. The public officials sought declaratory relief to void the financing statements and declare that the public officials were not debtors, an injunction to prevent the inmate from filing future financing statements without a court order, and attorney's fees. The public officials moved for summary judgment, which was granted. The inmate appeals. He contends, first, that the trial court lacked jurisdiction over him, and second, that the court improperly granted summary judgment. Concluding that the trial court had jurisdiction, and that its grant of summary judgment was proper, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Hernandez's Demand Letters And UCC Filings

Ralph Hernandez is an inmate at the Goose Creek Correctional Center. He asserts that he is "Sovereign." For example, Hernandez signs his legal documents as "Hernandez: Ralph TM ©, a sui juris and Sovereign."[2] Hernandez contends that the rule of law is comprised of certain "Maxims." He also endorses various aspects of the common law, admiralty law, and the UCC, along with the Alaska Organic Acts, the

---

[1]     *See generally Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 511 (Alaska 2015) (explaining that "[a] UCC financing statement is intended to provide notice to the world of a secured party's interest in specific collateral").

[2]     *See Hout v. Off. of the Governor*, 538 P.3d 702, 703-04 (Alaska 2023) (outlining assertions by "sovereign citizens").

Alaska Statehood Act, the United States Constitution, and the Alaska Constitution. Based on these authorities, Hernandez appears to believe that governmental authority is unlawful, except to the extent that it is based on commercial relationships, requiring express individual consent as memorialized by affidavits, contracts, liens, and bonds.

In connection with these beliefs, Hernandez sent letters to Governor Michael Dunleavy and other current and former public officials (collectively the officials). Most letters asserted the recipients were required to provide him with copies of licenses, bonds, or an oath of office, and one letter demanded payment to settle a purported dispute. When the officials did not respond to his letters, Hernandez filed UCC financing statements with the Alaska UCC Central File System Office asserting he was collectively owed $42.5 billion and that he was entitled to garnish the officials' wages.[3]

B.    **Complaint By The Officials And Motion For Summary Judgment**

In July 2022 the officials filed a complaint in superior court alleging that Hernandez's financing statements constituted "nonconsensual commercial lien[s]" which had "no legal or factual basis." They sought relief in the form of a court order "releas[ing] the claims of lien" by Hernandez,[4] plus declarations that Hernandez's documents were "null and void" and that the officials "owe[d] no money, property, or anything of value" to Hernandez. They also sought to enjoin Hernandez from "filing or recording any other lien, claim of lien, or any type of security interests against any

---

[3]    Hernandez sought $17.5 billion and 40% of salary from Governor Dunleavy, $120 million from former Attorney General Kevin Clarkson, $5 million and 40% of salary from an Office of Public Advocacy contract attorney, and $25 billion and 40% of salary from a Permanent Fund dividend specialist at the Department of Revenue.

[4]    Prior to the commencement of litigation, an attorney for the Department of Law had filed several "Notice[s] of invalid lien" pursuant to AS 09.45.161.

public servant of the State of Alaska, without prior authorization from a court of competent jurisdiction," and actual attorney's fees and costs for the action.

Between the time the officials filed their complaint and the time they moved for summary judgment, Hernandez filed multiple documents asserting that the case should be closed due to the officials' failure to respond to his requests for proof of "license, oath and bond," and because they "accepted their dishonor and default with liens without limits." In one filing he also stated that "[d]ue to the state's non-compliance, fraud, corruption, and obstruction of justice, I have no obligation to answer any of its opposition of its maritime laws or pay any imposed fees."

Hernandez further demanded proof of "license, oath and bond" from the judge presiding over the case and the officials' attorney. This action prompted the officials to apply for a temporary restraining order (TRO) to prevent Hernandez "from recording any further liens against state employees" without prior court approval. The officials were also concerned that Hernandez would file a UCC financing statement against the attorney, requiring him to join as a plaintiff and be conflicted from representing his clients. The court denied the TRO but ordered that Hernandez could not record a lien against the attorney, and determined that if Hernandez did so, it would not create a conflict for the attorney or require that he withdraw his representation.[5]

In December 2022, the officials moved for summary judgment, asserting that Hernandez's liens were invalid "nonconsensual common law liens" under AS 09.45.161 and AS 34.35.950(a). They contended that Hernandez lacked the required court authorization for the financing statements he had filed, and that none of the involved officials owed Hernandez a debt. The officials' summary judgment motion referenced attached copies of the financing statements at issue, as well as the officials'

---

[5] Hernandez attempted to file two more UCC financing statements during the pendency of this matter, one in violation of the court's order.

counsel's affidavit attesting to the lack of any civil judgment held by Hernandez against any of the officials.

Two months after the officials moved for summary judgment, Hernandez filed a stand-alone "Affidavit of Obligation." The "affidavit" stated, "i [sic], sui juris Hernandez: Ralph TM ©, state upon oath or affirmation that the following facts are true to the best of my knowledge," followed by Hernandez's notarized signature. The filing then restated several legal maxims and asserted that Hernandez was entitled to file his liens against the officials.

In March 2023, the court granted summary judgment in favor of the officials, awarded them attorney's fees pursuant to AS 09.45.164(c), and permanently enjoined Hernandez from "filing or attempting to file . . . any financing statements, notice of indebtedness, claims or purported [liens] . . . without first obtaining leave" from the court. Hernandez moved to "overturn the summary judgment granted to the state," and the court denied that motion.

Hernandez now appeals, asserting that the superior court lacked jurisdiction over him and that the court erred in granting summary judgment in favor of the officials.[6]

## III. STANDARD OF REVIEW

"We review questions regarding both subject matter jurisdiction and personal jurisdiction de novo, as '[j]urisdictional issues are questions of law subject to [our] independent judgment.' "[7]

---

[6] *See Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017) (observing our liberal interpretation of claims on appeal by self-represented parties).

[7] *Armstrong v. Chance*, 541 P.3d 1128, 1130 (Alaska 2024) (quoting *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 61 P.3d 6, 10 (Alaska 2002)).

We also review rulings on summary judgment de novo, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[8]

## IV. DISCUSSION

As a threshold matter, we reject Hernandez's claim that the superior court lacked jurisdiction over him or the matter in question. Here the court had both subject matter jurisdiction over the controversy at issue and personal jurisdiction over Hernandez. Because the superior court "is the trial court of general jurisdiction, with original jurisdiction in all civil and criminal matters,"[9] it had subject matter jurisdiction over the claims filed by the officials. Consistent with the superior court's general jurisdiction, AS 09.45.164(a) allows "[a] person whose real or personal property is subject to a claim of nonconsensual common law lien that has been recorded or filed" to request that the court release "the nonconsensual common law lien." Additionally, Hernandez's activities giving rise to this matter — his repeated use of Alaska's UCC Central File System Office to file liens against public officials — supports Hernandez's connection with Alaska such that the superior court had personal jurisdiction over him.[10] We therefore reject Hernandez's jurisdictional challenges.

Turning to the superior court's grant of summary judgment, we conclude the superior court did not err in granting summary judgment in favor of the officials. "Summary judgment is proper only when undisputed material facts lead to the

---

[8] *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 657 (Alaska 2011) (quoting *State Farm Mut. Auto. Ins. Co. v. Lestenkof*, 155 P.3d 313, 316 (Alaska 2007)).

[9] AS 22.10.020(a).

[10] AS 09.05.015(a)(1)(D) (providing for personal jurisdiction over person "engaged in substantial and not isolated activities in this state"); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985) (noting "even a single act can support jurisdiction" if it "creates a 'substantial connection' with the forum" (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957))).

conclusion that a party is entitled to judgment as a matter of law."[11]  "Under our long-standing summary judgment framework, the moving party has the initial burden of proving, through admissible evidence, that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law."[12]  "When a motion for summary judgment is made and supported as provided in [Alaska Civil Rule 56] . . . , an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading" and must instead "set forth specific facts showing that there is a genuine issue for trial."[13]

Hernandez contends that the superior court erred in granting the officials' summary judgment motion, although the basis for his argument is unclear.  The officials respond that the court correctly determined the liens filed by Hernandez amounted to improper nonconsensual common law liens, and that they were entitled to judgment and their requested relief as a matter of law.  We agree with the officials.

The superior court properly concluded that the financing statements Hernandez filed with the Alaska UCC Central File System Office were nonconsensual common law liens.[14]  A "nonconsensual common law lien" is defined as a lien on real or personal property that:

> (A) is not provided for by a specific state or federal statute or municipal ordinance;
>
> (B) does not depend on the consent of the owner of the property affected for its existence; and

---

[11]  *James v. Alaska Frontier Constructors, Inc.*, 468 P.3d 711, 717 (Alaska 2020) (citing Alaska R. Civ. P. 56(c); *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 517 (Alaska 2014)).

[12]  *Id.* (citing *Christensen*, 335 P.3d at 517).

[13]  Alaska R. Civ. P. 56(e).

[14]  The liens appear to have been properly filed under the statute, as they had affixed recording numbers and barcodes.  *See* AS 09.45.169(1) (defining "filed").

(C) is not an equitable, constructive, or other lien imposed by a court recognized under state or federal law.[15]

Hernandez's financing statements asserted that he was entitled to various sums of money belonging to the officials, and the financing statements meet all three of the additional statutory elements.[16]  First, the statutes Hernandez cites as the basis for his demand do not allow him to demand payment from public persons or to assert a lien.[17]  Rather, he merely asserts that "Dishonor & Default" due to the officials' failure to provide him proof of certain bonds or licenses entitles him to payment from the officials, an argument that we have expressly rejected.[18]  Second, Hernandez's theory that the officials owed him money for their failure to act on his demands does not depend on their consent.[19]  Indeed, he has made various demands of the officials and claimed entitlement to payment by them without any regard for their consent or lack thereof.[20]  Third, Hernandez's claimed entitlement was not imposed by a court, but

---

**15**      AS 09.45.169(2).

**16**      *See id.* (defining "nonconsensual common law lien" as "a lien on real or personal property").

**17**      *See* AS 08.08.210 (outlining who may practice law in Alaska); AS 39.15.010-.100 (establishing bonding requirements when "required by statute or regulation under authority of law"); AS 39.05.040 (outlining requirement that certain public officials "take, sign, and file the oath of office required by the constitution before entering upon the duties of office").

**18**      *See Hout v. Off. of the Governor*, 538 P.3d 702, 705 (Alaska 2023) (rejecting this particular "legal conclusion . . . style[d] [as an] assertion of fact" as basis for claim (alterations in original) (quotation marks omitted) (quoting *Forrer v. State*, 471 P.3d 569, 585 (Alaska 2020))).

**19**      *See* AS 09.45.169(2)(B).

**20**      *See* RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 69 (AM. L. INST. 1981) (noting the "exceptional cases" where silence can constitute acceptance of an *offer*, but not a demand).

rather created through Hernandez's own assertions.[21]  And a nonconsensual common law lien that is not accompanied by a court order authorizing its filing is invalid.[22]

The court properly concluded that Hernandez filed his liens without an authorizing court order, and that the liens were therefore unlawful.  None of the financing statements filed by Hernandez were accompanied by an authorizing court order as required by AS 09.45.161 and AS 34.35.950.  Moreover, the affidavit of the officials' attorney established the absence of any judgment held by Hernandez against the officials that could form the basis of a court award.

In response to the officials' showing on summary judgment, Hernandez failed to offer admissible evidence raising any genuine dispute of material fact or to offer any valid legal argument against the officials' entitlement to judgment.[23]  Indeed, even if Hernandez's memoranda were treated as evidence, those memoranda raise no dispute with the superior court's central conclusions that Hernandez's financing statements constituted nonconsensual common law liens and that those liens lacked any basis in or authorization by the required court orders.[24]  The officials were thus entitled to judgment as a matter of law.

## V.    CONCLUSION

We AFFIRM the superior court's grant of summary judgment.

---

[21]    *See* AS 09.45.169(2)(C).

[22]    *See* AS 09.45.161; AS 34.35.950(a).

[23]    *See James v. Alaska Frontier Constructors, Inc.*, 468 P.3d 711,717 (Alaska 2020) (citing *Christensen v. Alaska Sales & Serv., Inc.*, 355 P.3d 514, 517 (Alaska 2014)).

[24]    *Id.*