# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0956-22

B.A.F.,[1]

    Plaintiff-Respondent,

v.

H.D.N.,

    Defendant-Appellant.

_____

Submitted January 16, 2024 – Decided January 30, 2024

Before Judges Marczyk, Chase, and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FV-18-0292-33.

H.D.N. appellant pro se (Rajeh A. Saadeh and Sierra K. Chandler, on the brief).

Legal Services of Northwest Jersey, attorneys for respondent (Nana Abena Asantewaa Osafo, on the brief).

---

[1] The parties' initials are used to protect confidentiality, pursuant to R. 1:38-3(d)(9)-(10).

PER CURIAM

Defendant H.D.N. appeals from the October 21, 2022 final restraining order ("FRO") entered against him under the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35. We affirm.

I.

Plaintiff B.A.F. is a resident of Bernards Township and was sixty-four at the time of the event giving rise to this case. She was in a romantic relationship with defendant for four years and engaged for two of those years. Defendant is also a resident of New Jersey.

In late August 2022, the couple was vacationing in Panama City Beach, Florida when they started to disagree over financial matters. When the couple arrived at their hotel, plaintiff went to the pool alone for approximately two hours. When she returned to the room, defendant was gone and did not respond to plaintiff's text messages. Defendant returned to the room hours later.

Plaintiff testified defendant appeared drunk because "he was stumbling into the room. He had a weird – like a blank stare to his face." Plaintiff testified defendant told her, "You're the one I love and you're the one I have to kill," and then pinned her body to the bed and began to strangle her. During the altercation, defendant's phone fell from his pocket, and plaintiff tried to grab it

2

to call 9-1-1, but defendant retrieved his phone before she could do so. While still pinning plaintiff to the bed and strangling her a second time, defendant asked plaintiff for her engagement ring. Plaintiff was able to retrieve the ring from her purse, and defendant took the ring and his bags and left the hotel room. Plaintiff then called 9-1-1 and described defendant to the police, who apprehended him at the hotel.

An officer from the Panama City Beach Police Department ("PCBPD") documented injuries plaintiff sustained to her neck, chest, arms, wrists, and toe. Plaintiff testified the strangulation caused her to fear for her life. Plaintiff returned home to New Jersey three days later as planned, and defendant was not on the flight. Defendant faced criminal charges in Florida stemming from the altercation.

The day after arriving home, plaintiff reported the incident to the Bernards Township Police Department and filed for a temporary restraining order ("TRO"), which was granted the same day. A trial on plaintiff's request for an FRO began on September 30, 2022. Both parties were represented by counsel, and plaintiff was the only witness to testify.

At the FRO trial, plaintiff attempted to introduce into evidence twelve photographs of her injuries, five of which had been taken by the responding

A-0956-22

PCBPD officer and emailed to plaintiff by another PCBPD employee. Defendant objected on authentication grounds. The court sustained defendant's objection and allowed only the photographs taken by plaintiff herself to be admitted.

On the second day of trial, defendant entered into evidence bodycam footage from the Bernards Township police officer who heard plaintiff's complaint in connection with her TRO application. The footage captured the following exchange:

> [PLAINTIFF]: — came back yesterday in the morning.
>
> [OFFICER]: That sounds terrible.
>
> [PLAINTIFF]: I didn't even know that, any of that until I got back from Florida, that he filed for bankruptcy. We were supposed to, we were supposed to be getting a mortgage. How are they supposed to get a mortgage with — anyway, (indiscernible), so —
>
> [OFFICER]: Not (indiscernible) convicted.
>
> [PLAINTIFF]: Oh, that's not until October 13th. And that's where — a little scared. If he were sober —
>
> [OFFICER]: Uh-huh
>
> [PLAINTIFF]: — 100 percent — I think when he's sober I don't think I'd be afraid. But what if he goes out drinking? He's been through a lot.

On re-direct, plaintiff again attempted to introduce the PCBPD photographs, arguing defendant had opened the door as to photographic

A-0956-22

evidence of the bruising, and the photographs' authenticity could be further corroborated by bodycam footage obtained from the PCBPD officer, which captured him taking the photographs. The court watched two minutes of PCBPD bodycam footage and then admitted three additional photographs into evidence over defendant's objection. At the conclusion of her testimony, plaintiff moved the PCBPD bodycam footage into evidence, also over defendant's objection.

On October 21, 2022, the trial court granted the FRO. The court prefaced its ruling by stating:

> As in any [domestic violence] case I need to make decisions with respect to jurisdiction, predicate act, prior history if any is alleged. I must perform what's called a Silver[2] analysis determination as to whether a[n FRO] is necessary to protect the plaintiff if I find there's been a predicate act and obviously jurisdiction. And I must assess credibility of any witness.

Commenting first on witness credibility, the court found plaintiff to be "more credible than not," determined her testimony was supported by the photographs, and noted her willingness to answer questions. The court acknowledged some inconsistencies in plaintiff's testimony, and stated there was more to the story than what plaintiff had revealed on direct, but still concluded overall, she was more credible than not.

---

[2] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

The court then established it had jurisdiction because of the parties' prior engagement. The court acknowledged there was no allegation or testimony of a prior history of domestic violence. After summarizing plaintiff's testimony, the court found plaintiff proved defendant committed simple assault, N.J.S.A. 2C:12-1, by a preponderance of the evidence. The court stated that once a predicate act of domestic violence has been shown, a determination the plaintiff requires an FRO for protection is "often perfunctory and self-evident," and subsequently addressed the statutory factors under N.J.S.A. 2C:25-29(a)(1) to (6), finding plaintiff needed an FRO to protect her from future acts of domestic violence.

On appeal defendant argues: 1) New Jersey courts do not have jurisdiction to issue an FRO where the predicate act of violence occurred in another state, the plaintiff did not flee to New Jersey because she already lived here, and she successfully sought protections of the laws of the state where the alleged violence took place; 2) the Family Part judge did not make adequate findings of fact as to the predicate act of violence and plaintiff's need for continued protection under Silver; and 3) the matter should be reassigned to a different judge on remand.

6

II.

Our review of a court's decision after a bench trial is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). In reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." J.D. v. A.M.W., 475 N.J. Super. 306, 312-13 (App. Div. 2023) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)). Trial court findings are "binding on appeal when supported by adequate, substantial, credible evidence." G.M. v. C.V., 453 N.J. Super. 1, 11 (App. Div. 2018) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). Deference is particularly appropriate "when the evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997).

We do not disturb a trial judge's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant[,] and

reasonably credible evidence as to offend the interests of justice." S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise . . .'" C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)).

By contrast, legal decisions of Family Part judges are reviewed under the same de novo standard applicable to legal decisions in other cases. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019). Whether a court has subject-matter jurisdiction is a legal determination. AmeriCare Emergency Med. Serv., Inc. v. City of Orange Twp., 463 N.J. Super. 562, 570 (App. Div. 2020).

The New Jersey Legislature enacted the PDVA "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. The PDVA protects victims of domestic violence, which include, among others, "any person . . . who has been subjected to domestic violence by a person with whom the victim has had a dating relationship." N.J.S.A. 2C:25-19(d); R.G. v. R.G., 449 N.J. Super. 208, 219-20 (App. Div. 2017) (recognizing the amended definition of "[v]ictim of domestic violence" evinced "the Legislature's intent to broaden the application" of the PDVA).

8

Before an FRO may be issued, the court must engage in a two-prong analysis and make specific factual findings and legal conclusions. Silver, 387 N.J. Super. at 125-27. First, the court determines, "in light of the previous history of violence between the parties," "whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-29(a) has occurred." Id. at 125. Next, the court evaluates the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -(6) and determines whether an FRO is necessary "to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

## III.

Defendant argues, for the first time on appeal, New Jersey did not have subject-matter jurisdiction over plaintiff's TRO and FRO applications. Defendant maintains the language of N.J.S.A. 2C:25-28(a), which reads, "[a] [domestic violence] plaintiff may apply for relief under [the PDVA] in a court having jurisdiction over the place where the alleged act of domestic violence occurred, where the defendant resides, or where the plaintiff resides or is sheltered," confers venue, not jurisdiction. Defendant argues there is no precedential support for New Jersey exercising subject-matter jurisdiction to enter an FRO where the alleged predicate act took place outside of NewJersey,

A-0956-22

plaintiff did not seek shelter in New Jersey because she already resided here, and plaintiff successfully sought protection of the laws of the state where the abuse allegedly occurred.

It is axiomatic that subject-matter jurisdiction is essential to a valid judgment and therefore may never be waived. R. 4:6-7; see also Murray v. Comcast Corp., 457 N.J. Super. 464, 470 (App. Div. 2018). Our courts are "invested with general jurisdiction that provides expansive authority to resolve myriad controversies brought before them." Thompson v. Atl. City, 190 N.J. 359, 378-79 (2007). "[S]ubject matter jurisdiction is presumed for courts of general jurisdiction unless proved otherwise[.]" Ibid. (citing Turner v. Bank of N. Am., 4 U.S. 8, 11 (1799)).

With respect to an application for relief, the PDVA provides:

> A plaintiff may apply for relief under this section in a court having jurisdiction over the place where the alleged act of domestic violence occurred, where the defendant resides, or where the plaintiff resides or is sheltered, and the court shall follow the same procedures applicable to other emergency applications.
>
> [N.J.S.A. 2C:25-28(a) (emphasis added).]

The Act also provides, "[a] municipal court judge or a judge of the Family Part of the Chancery Division of the Superior Court may enter an ex parte order . . . ." N.J.S.A. 2C:25-28(f) (emphasis added). After the filing of the

complaint, "[a] hearing shall be held in the Family Part of the Chancery Division of the Superior Court . . . in the county where the [TRO was] ordered[.]" [. . . .]" N.J.S.A. 2C:25-29(a) (emphasis added). The TRO "shall remain in effect until a judge of the Family Part issues a further order." N.J.S.A. 2C:25-28(i) (emphasis added). Both TROs and FROs "shall be in effect throughout the State, and shall be enforced by all law enforcement officers." N.J.S.A. 2C:25-28(p) (emphasis added).

While the predicate acts of violence are part of the Criminal Code, "[t]he jurisdictional limitation contained in [N.J.S.A.] 2C:1-3 does not prevent a victim of domestic violence from filing a domestic violence complaint in this State based on a criminal act that took place in another state . . . ." Cannel, New Jersey Criminal Code Annotated, cmt. 2 on N.J.S.A. 2C:25-17 (2023); see also State v. Reyes, 172 N.J. 154, 168 (2002) (finding that the criminal code's jurisdictional limitations do not limit civil jurisdiction, and to find otherwise would "ignore[] the Legislature's 'encourage[ment of] the broad application of the remedies available under [the PDVA] . . . .'" (second alteration in original) (quoting N.J.S.A. 2C:25-18)). The predicate act need not have taken place in New Jersey. Reyes, 172 N.J. at 161-62 (finding the PDVA permits courts to consider another jurisdiction's orders as an adequate basis to issue restraints in

New Jersey, because it contemplates jurisdiction, even where the predicate act occurred outside the state).

In Shah v. Shah, a defendant challenged a TRO on both personal and subject-matter jurisdictional grounds. 184 N.J. 125, 129 (2005). The defendant resided in Illinois, which was the site of the alleged predicate acts of violence. Ibid. The plaintiff had relocated to New Jersey, seeking refuge with family friends, and resided here when she made her initial application for ex parte relief. Ibid. We found that both subject-matter and personal jurisdiction existed regarding protective or prohibitory portions of the TRO because the "plaintiff, having a lawful presence in New Jersey and residing here, at least for the time being, is entitled to seek and expect the full protection of our laws." Shah v. Shah, 373 N.J. Super. 47, 52 (App. Div. 2004).

The Supreme Court explicitly endorsed our finding as to subject-matter jurisdiction, rejecting the defendant's assertion that the action could have been brought only in Illinois. Shah, 184 N.J. at 135. In no uncertain terms, the Court held, "[t]he fundamental logic of that statutory provision is unassailable: a victim of domestic abuse who seeks a place of refuge must be able to engage the protections of the law of the jurisdiction in which she is sheltered. To state

A-0956-22

otherwise flies in the face of plain common sense." Id. at 135-36. The Court expressly held:

> [A]s long as one of the statutorily enumerated subject matter jurisdiction conditions precedent to the filing of a domestic violence complaint is present and the action is [properly] venued[,] . . . New Jersey courts have all requisite subject matter jurisdiction to adjudicate a complaint seeking relief under the [PDVA].
>
> [Id. at 137.]

Here, defendant's position is contrary to the controlling precedent in Shah. The factual distinctions between Shah and the present case— namely that plaintiff already lived in New Jersey and therefore did not flee to or seek refuge here— have no bearing on a subject-matter jurisdiction determination. It does not follow that because a court properly granted relief to a plaintiff who moved to New Jersey, it improperly granted relief to one who already lived here. Nothing about N.J.S.A. 2C:25-28(a) suggests that New Jersey must be terra nova when a plaintiff who was out of state returns and seeks the protection of the PDVA.

Additionally, defendant's argument that subject-matter jurisdiction should be denied where plaintiff "successfully sought the protections of the law where the acts took place" is unavailing. The PDVA considers orders entered by another jurisdiction as one method of establishing the underlying predicate act

13

of violence, and as a factor in determining the necessity of an FRO, but it is not a bar to entry of an FRO as defendant suggests. Further, as a factual matter, nothing in the record reflects that plaintiff sought civil restraints in Florida, only the assistance of law enforcement officers there. In fact, defendant's election not to testify was based on his pending <u>criminal</u> matters in Florida. As the Court explained in <u>Reyes</u>, the jurisdictional limits of a state's criminal code have no effect on the validity of civil restraints entered under the PDVA. 172 N.J. at 168 ("[C]riminal and civil statutes concerning domestic violence create separate rights and remedies. . . . [The PDVA] provides twin avenues of relief . . . .").

Further, defendant's argument makes little sense when read in conjunction with sections of the PDVA providing for hearing procedures, timelines for orders to remain in effect, and enforcement by law enforcement officials. <u>See</u> <u>DiProspero v. Penn</u>, 183 N.J. 477, 492 (2005) (statutory provisions are to be "read . . . in context with related provisions so as to give sense to the legislation as a whole") (citing <u>Chasin v. Montclair State Univ.</u>, 159 N.J. 418, 427-27 (1999)).

Plaintiff was "in a dating relationship" with defendant, and therefore meets the definition of "[v]ictim of domestic violence" under N.J.S.A. 2C:25-19(d). Plaintiff resides in Bernards Township, and therefore the action

14

was properly venued in Somerset County. Under <u>Shah</u>, subject-matter jurisdiction was properly exercised, and the FRO was properly entered, so long as plaintiff established a predicate act of violence was committed and she needed an FRO to protect her in the future.

IV.

Defendant next argues the trial court's findings of fact as to the predicate act of violence did not adequately consider the inconsistencies in plaintiff's testimony. He asserts plaintiff's motivations for the restraining order are not for protection from any alleged violence, but defendant's bankruptcy. Defendant charges plaintiff with "us[ing] the PVDA as a sword, executing revenge against [d]efendant because of his decimated credit and inability to provide her with home ownership . . . ." He notes the admission of the PCBPD photographs exemplifies the inadequacy of the trial court's factfinding. Defendant also argues the court failed to consider all relevant factors under <u>Silver</u> and N.J.S.A. 2C:25-29(a). He maintains an FRO was not warranted because he has ceased all contact with plaintiff; plaintiff continued her vacation as planned; and plaintiff told the Bernards Township police officer she was not afraid of defendant.

A-0956-22

We are satisfied the court's conclusion that defendant assaulted plaintiff was supported by substantial, credible evidence in the record. The court found plaintiff "more credible than not," and the record, including properly admitted photographs and body-worn camera footage, supports the court's finding that defendant committed a predicate act, simple assault, under the PDVA. Additionally, our review of the record reveals sufficient support for the court's conclusion that an FRO was necessary to protect plaintiff from future acts of violence. Specifically, the record supports plaintiff's fear of defendant's behavior, especially when he drinks. The judge properly considered the statutory factors in N.J.S.A. 2C:25-29(a) and found that an FRO was in the plaintiff's best interests. We see no reason to disturb his ruling.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0956-22